LABOR MEDIATION BOARD *v.*
TUSCOLA COUNTY SHERIFF

1. SHERIFFS AND CONSTABLES—DEPUTIES.
    The office of a sheriff is a constitutional office and a sheriff, upon taking office, may appoint deputy sheriffs as provided by statute (Const 1963, art 7, § 4; MCLA § 51.70).

2. LABOR RELATIONS—MEDIATION BOARD—AUTHORITY.
    The authority of the Labor Mediation Board is purely statutory (MCLA § 423.216).

3. SHERIFFS AND CONSTABLES—DEPUTIES.
    Determination by a sheriff of which deputy shall be assigned to certain duties is necessary, in order for him to conduct his office in an orderly manner.

4. SHERIFFS AND CONSTABLES—DEPUTIES.
    A sheriff is the chief police officer having to do with law enforcement in a county and he should not be hampered in his administration of the office by any agency or board as to the actual assignment of duties to be performed by a sheriff's deputy.

5. LABOR RELATIONS — REINSTATEMENT — EQUIVALENT POSITION — SHERIFFS AND CONSTABLES.
    Labor Mediation Board Order requiring that a deputy sheriff, who had been a road patrol officer, be reinstated to his former or substantially equivalent position was complied with when the sheriff offered to take the deputy back as a deputy sheriff and assigned him to the duties of turnkey of the jail, where the classification or title of a patrol officer and a turnkey are the same, the hours are the same, and the fringe benefits are the same.

---

REFERENCES FOR POINTS IN HEADNOTES

[1, 3, 4] 47 Am Jur, Sheriffs, Police and Constables § 154.
[2] 48 Am Jur 2d, Labor § 1400.
[5] 47 Am Jur, Sheriffs, Police and Constables §§ 24, 27, 154, 155.

Original action in the Court of Appeals. Submitted Division 2 June 24, 1969, at Grand Rapids. (Docket No. 7,403.) Decided June 30, 1970.

Complaint by the Michigan Labor Mediation Board against Hugh Marr, Sheriff of Tuscola County, for an enforcement order to compel defendant to rehire a former deputy sheriff in a capacity acceptable to plaintiff. Order of enforcement denied.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Francis W. Edwards,* Assistant Attorney General, for plaintiff.

*James J. Eskamp,* for defendant.

*D. Hale Brake, amicus curiae,* for intervening defendant Michigan Sheriff's Association.

Before: HOLBROOK, P. J., and R. B. BURNS and T. M. BURNS, JJ.

PER CURIAM. This matter pertains to a petition of the Michigan Labor Mediation Board for an enforcement of its order in accordance with § 16(d) of the public employees' labor relations act (PERA), MCLA § 423.216(d) (Stat Ann 1968 Rev § 17.455 [16][d]). Hugh Marr was and is Sheriff of Tuscola County, and under the statute appointed nine or ten deputy sheriffs in his department. Hilton H. Sarles is a former deputy sheriff. On February 16, 1968, Sarles filed a charge with the Michigan Labor Mediation Board alleging that Marr had been guilty of an unfair labor practice in dismissing Sarles because of his activities in forming a deputies' labor organization. On March 16, 1968, Marr filed an an-

swer denying the charge and alleging that Sarles had been discharged for misconduct.

On April 3, 1968, a trial examiner, James R. Mc-Cormick, took testimony in Caro from witnesses offered by both Marr and Sarles. On April 30, 1968, McCormick issued a decision and recommended order in which he found that Marr was guilty of an unfair labor practice in discharging Sarles and that Sarles should be reinstated with back pay. More than 20 days later, no objection to the recommended order having been received, the board issued its decision and order on June 6, 1968, adopting the decision and order of the examiner and ordering that Sarles be reinstated to his former or substantially equivalent position with back pay. On May 22, the sheriff offered to take Sarles back as deputy sheriff, at his former pay, with the same hours, same leave, and any other fringe benefits, and assigned him at that time to the duties of turnkey of the jail.

The board was later advised that Sarles had refused the offer of reemployment because he claimed that it was a lesser job that was offered, that of turnkey in the jail. The board scheduled another hearing in Caro for the purpose of finding out if the job offered was a proper compliance with the board's order. On October 9, 1968, the trial examiner issued a decision and recommended order in which he found, as a matter of fact, that the offer of reemployment was to a lesser position, not substantially equivalent to Sarles' former position as a road patrol officer. The examiner's order required Marr to rehire Sarles as a road patrolman, make him whole for any loss from his discharge, and reimburse Sarles for costs of litigation and reasonable attorney's fees as to the second hearing.

On October 28, 1968, Marr filed exceptions with the labor mediation board to the recommended order. On December 5, 1968, the board issued its decision and order finding the exceptions to be without merit and adopted the recommended order as the order of the board.

The Attorney General, on behalf of the board, filed this petition for enforcement alleging that Marr has "refused and neglected to comply with the terms of the board's order of December 5, 1968", and asking this Court pursuant to the above-cited § 16(d) of PERA, to "issue an order which will effectively enforce the order of the labor mediation board dated December 5, 1968".

By order of our Court, the Michigan Sheriffs Association was permitted to intervene and file an *amicus curiae* brief.

One issue is presented herein. Did the sheriff's offer to reinstate deputy Sarles comply with the April 30 and June 6, 1968, orders of reinstatement to his former, or a substantially equivalent position?

The board asserts that it is the determiner of whether the job offered was the same or a substantially equivalent position and cites § 16(d) of PERA which provides in part:

"The findings of the board with respect to questions of fact if supported by competent, material and substantial evidence on the record considered as a whole *shall be conclusive.*"

The office of a sheriff is a constitutional office. Const 1963, art 7, § 4. A sheriff, upon taking office, may appoint deputy sheriffs as provided in MCLA § 51-.70 (Stat Ann 1961 Rev § 5.863) which provides in part as follows:

"Each sheriff may appoint 1 or more deputy sheriffs at his pleasure, and may revoke such ap-

pointments at any time; and persons may also be deputed by any sheriff, by an instrument in writing, to do particular acts, who shall be known as special deputies and each sheriff may revoke such appointments at any time."

The authority of the labor mediation board, as it was then known, is purely statutory. The statute describing the board's power is found at MCLA § 423.216 (Stat Ann 1968 Rev § 17.455[16]), as enacted by PA 1965, Nos 379 and 397. In both acts the language in subsection (b), which states what the board may do when it has found that the employee was fired for organizational activity, is:

"If upon the preponderance of the testimony taken the board is of the opinion that any person named in the complaint has engaged in or is engaging in the unfair labor practice, then it shall state its findings of fact and shall issue and cause to be served on the person an order requiring him to cease and desist from the unfair labor practice, and to take such affirmative action including reinstatement of employees with or without back pay, as will effectuate the policies of this act."

Sheriff Marr asserts that he did just what the board, by its order of June 6, 1968, told him to do, and the Michigan Sheriffs Association goes further and contends that no interpretation of the quoted statute is in order that would permit the board to do what it attempted on December 5, namely, tell the sheriff what duties he may give his reinstated deputy, and that the board exhausted its authority in its order of June 6. The Michigan Sheriffs Association further asserts that except when this statute comes into play, and except for the Veteran's Preference Act, not involved here, or civil service in a county that has it, again not involved here, deputies serve at the pleasure of the sheriff. No one has any

authority to tell the sheriff what each deputy shall do at a given time except the court or the Governor.

The sheriff has only deputy sheriffs in the category in which Sarles was acting both before and after his dismissal. In order for the sheriff to conduct his office in an orderly fashion, it is necessary for him to determine which deputy shall be assigned to certain duties. The classification or title (deputy sheriff), of a patrol officer or a turnkey were the same, the hours were the same, the fringe benefits were the same. Now it is true that possibly a deputy would rather be a patrolman with an automobile on the highways than be a turnkey in the jail. It might be possible for another deputy to prefer to be a turnkey rather than a patrolman. It is not the prerogative of deputies to choose their duties, for the duties of a deputy sheriff are varied and someone has to determine each deputy's assignment from time to time. Inasmuch as the sheriff is the chief police officer having to do with law enforcement in the county, he should not be hampered in his administration of the office by any agency or board as to the actual assignment of duties to be performed by a sheriff's deputy.

We rule that the sheriff complied with the order of June 6. The petition for order of enforcement is denied.