NATIONAL UNION OF POLICE OFFICERS LOCAL 502-M, AFL-CIO
v WAYNE COUNTY BOARD OF COMMISSIONERS

Docket No. 78-2800. Submitted June 8, 1979, at Detroit.—Decided
October 15, 1979.

Gary McKeon, a Wayne County deputy sheriff, was convicted of
intentionally pointing a firearm at another person. A sheriff's
trial board found that he had violated departmental rules and
recommended a 20-day suspension, psychiatric evaluation, addi-
tional training and a transfer to a division of the department in
which he would be without police powers for nine months.
These recommendations were adopted by the sheriff. McKeon
and his union, National Union of Police Officers Local 502-M,
AFL-CIO, appealed to the Voluntary Labor Arbitration Tribu-
nal pursuant to a collective bargaining agreement and the
matter went to arbitration. The arbitrator affirmed the convic-
tion, upheld the suspension, overturned the orders for psychiat-
ric evaluation and additional training and ordered McKeon
transferred back to his original division in 4-1/2 months. The
sheriff complied with the arbitration award except that he
refused to reassign McKeon to his former division where he
could exercise law enforcement powers. The union and McKeon
petitioned for a writ of mandamus seeking an order compelling
the sheriff and the Board of Commissioners for Wayne County
to comply fully with the arbitrator's award and to restore
McKeon's law enforcement powers. The petition was denied,
Wayne Circuit Court, Irwin H. Burdick, J. Plaintiffs appeal.
Defendants contend that the constitution and laws of Michigan

REFERENCES FOR POINTS IN HEADNOTES
[1] 70 Am Jur 2d, Sheriffs, Police, and Constables § 1.
[2, 12] 16 Am Jur 2d, Constitutional Law § 299.
  16A Am Jur 2d, Constitutional Law § 361.
[3, 5] 70 Am Jur 2d, Sheriffs, Police, and Constables §§ 21, 26.
[4] 70 Am Jur 2d, Sheriffs, Police, and Constables § 6.
[6] 48A Am Jur 2d, Labor and Labor Relations § 1770.
[7, 8] 48 Am Jur 2d, Labor and Labor Relations § 998.
[9] 48 Am Jur 2d, Labor and Labor Relations §§ 983, 1209.
[10, 11] 48A Am Jur 2d, Labor and Labor Relations § 1764.
  70 Am Jur 2d, Sheriffs, Police, and Constables § 6.

vest the authority to grant law enforcement powers to deputies exclusively in the sheriff. Plaintiffs argue that the sheriff's discretion is limited by the public employment relations act and by the terms of collective bargaining agreements concluded pursuant to the act. *Held:*

1. A sheriff's power to hire, fire and discipline deputies is limited by the public employees relations act and is not absolute.

2. All terms and conditions of deputy employment are subject to collective bargaining and to any agreement resulting therefrom, unless that bargaining or agreement infringes upon matters which are placed within the exclusive power of the sheriff by the constitution.

3. The Legislature may limit a sheriff's power to hire, fire and discipline but the matter as to which of his deputies shall be delegated the powers of law enforcement is a matter entrusted to him by the constitution, is a matter exclusively within his jurisdiction and inherent in the nature of his office and may neither be infringed upon by the Legislature nor delegated to a third party.

4. The legislative delegation of the executive police power to the sheriff may not be limited by a collective bargaining agreement but remains vested exclusively in the sheriff. Therefore, the arbitrator exceeded his authority, under the bargaining agreement, by ordering the sheriff to restore McKeon's law enforcement powers before the sheriff, in the exercise of his discretion, was prepared to do so. The trial court properly denied plaintiffs' petition for a writ of mandamus.

Affirmed.

1. SHERIFFS AND CONSTABLES — PEACE OFFICERS — POLICE POWER — EXECUTIVE POWER — PRESERVATION OF PEACE.

A sheriff is a peace officer charged with enforcing the laws enacted by the Legislature under the state police power and it is his duty to wield the executive power for the preservation of the public peace.

2. CONSTITUTIONAL LAW — SHERIFFS AND CONSTABLES — POLICE POWER — SUBORDINATE GOVERNMENTAL AGENCIES — DELEGATION OF POWER.

The powers and duties of a sheriff comprise a part of the police power of the state which may be delegated to subordinate governmental agencies, but being an inherent attribute of sovereignty they may not be otherwise delegated or bargained away.

3. Constitutional Law — Sheriffs and Constables — Duties and Powers — Legislative Interference.

The office of sheriff is a constitutional office with duties and powers provided by law; the Legislature may vary the duties of a constitutional office, but may not change the duties so as to destroy the power to perform the duties of the office.

4. Sheriffs and Constables — Deputies — Appointment of Deputies — Sheriff's Discretion — Rules and Regulations.

A sheriff may appoint one or more deputy sheriffs at his pleasure and may revoke such appointments at any time; this statutory provision has been interpreted as giving him complete discretion in hiring and firing deputies and the power to establish rules and regulations for their conduct (MCL 51.70; MSA 5.863).

5. Sheriffs and Constables — Constitutional Law — Law Enforcement — Office Administration — Deputies — Assignment and Duties.

The office of sheriff was created by the constitution and a sheriff, as the chief law enforcement officer in a county, should not be hampered in the administration of his office by any agency or board as to the actual assignment of duties to be performed by a sheriff's deputy.

6. Labor Relations — Public Employment Relations Act — Collective Bargaining — Constitutional Law — Wages and Hours — Statutes.

A public employer is subject to the mandatory collective bargaining provisions of the public employment relations act and must bargain with regard to all subjects which may be included in the phrase wages, hours and other terms and conditions of employment unless bargaining would clearly interfere with those matters for which control is vested exclusively in the employer by the constitution (MCL 423.215; MSA 17.455[15]).

7. Labor Relations — Collective Bargaining — Mandatory Subjects — Permissive Subjects — Illegal Subjects.

Subjects for collective bargaining are classified as mandatory, permissive and illegal; the parties are required to bargain in good faith on mandatory subjects such as wages, hours and other terms and conditions of employment, although they need not reach agreement; the parties may bargain by mutual agreement on permissive subjects, but are not required to do so; as to illegal subjects, no contract provision is enforceable, although the parties are not forbidden to discuss such matters.

8. LABOR RELATIONS — COLLECTIVE BARGAINING — MANDATORY SUB-
   JECTS — MANAGEMENT DECISIONS — EMPLOYMENT SECURITY.

   Wages, hours, and other terms and conditions of employment are
   mandatory subjects for collective bargaining and any matter
   which has a significant impact on these subjects or settles an
   aspect of the relationship between the employer and employees
   requires bargaining; management decisions which are funda-
   mental to the basic direction of a corporate enterprise or which
   impinge only indirectly upon employment security are not
   subjects of mandatory collective bargaining.

9. LABOR RELATIONS — COLLECTIVE BARGAINING — ILLEGAL SUBJECT
   — VIOLATION OF LAW.

   An illegal subject of collective bargaining is one which would
   result in an agreement that would be in violation of the law.

10. LABOR RELATIONS — SHERIFFS — POWERS — DISCRETION — PUBLIC
    EMPLOYEES RELATIONS ACT.

   A sheriff's power to hire, fire and discipline deputies is not
   absolute; his discretion in these areas is limited by the public
   employees relations act.

11. LABOR RELATIONS — SHERIFFS — DEPUTIES — COLLECTIVE BAR-
    GAINING — TERMS AND CONDITIONS OF EMPLOYMENT — CONSTI-
    TUTIONAL LAW.

   The terms and conditions of deputy employment are subject to
   collective bargaining and to any agreement resulting there-
   from, unless that bargaining or agreement infringes upon
   matters which are placed within the exclusive power of the
   sheriff by the constitution.

12. LABOR RELATIONS — SHERIFFS — DEPUTIES — SHERIFF'S POWERS
    — SHERIFF'S JURISDICTION — LEGISLATURE — CONSTITUTIONAL
    LAW.

   The Legislature may limit a sheriff's power to hire, fire and
   discipline deputies; however, the matter as to which of his
   deputies shall be delegated the powers of law enforcement is a
   matter entrusted to him by the constitution, is exclusively
   within his jurisdiction, is inherent in the nature of his office
   and may neither be infringed upon by the Legislature nor
   delegated to a third party.

*Jenkins, Nystrom & Sterlacci, P.C.* (by *Dennis
H. Nystrom* and *Stephen J. Hitchcock),* for plain-
tiffs.

*Adam P. Angelas,* for William Lucas, Sheriff of Wayne County.

Before: R. M. MAHER, P.J., and BRONSON and A. E. MOORE,* JJ.

R. M. MAHER, P.J. Plaintiffs appeal as of right from the order of the Wayne County Circuit Court denying their petition for a writ of mandamus to compel defendants to comply with an arbitrator's award by restoring plaintiff McKeon's "police powers".[1]

Plaintiff Gary McKeon, a Wayne County deputy sheriff, was convicted on April 13, 1977, of intentionally pointing a firearm at another person, MCL 750.233; MSA 28.430. Subsequently, he was found by a sheriff's trial board to have violated departmental rules. The board recommended that McKeon be suspended for 20 days; it further recommended that he undergo psychiatric evaluation and additional training. The board also recommended that McKeon be transferred to a division of the department in which he would be without "police powers" for a period of nine months. The sheriff adopted the trial board's recommendations.

Pursuant to the collective bargaining agreement between plaintiff union and defendants, plaintiff McKeon appealed and the matter went to arbitration.[2] The arbitrator affirmed the conviction on

---

* Former circuit judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

[1] The trial board, the arbitrator and the parties used the term "police powers" below, and the parties continue to do so on appeal. To avoid possible confusion with the state's police power, however, we prefer to use the term "law enforcement powers".

[2] The arbitration clause reads as follows:

"In the event the Union concludes that a member has been unjustly punished or dismissed by a trial board, it may, within thirty (30) calendar days after receipt of the Judgment of the trial board, appeal such Judgment to arbitration as provided. The arbitrator shall

departmental charges and upheld the 20-day sus-
pension, but overturned the order for psychiatric
evaluation and additional training and ordered
McKeon transferred back to his original division
in 4-1/2 months rather than the 9 months recom-
mended by the trial board and adopted by the
sheriff. The sheriff complied with the arbitration
award in all respects save one: he refused to
reassign McKeon to his former division, where he
would exercise law enforcement powers.

On November 21, 1977, plaintiffs filed their pe-
tition for a writ of mandamus in circuit court,
seeking an order compelling the sheriff to comply
fully with the arbitrator's award and to restore
McKeon's law enforcement powers. Defendants
filed an answer in opposition to the petition, as-
serting that the arbitrator was without authority
to order the sheriff to restore McKeon's powers as
a peace officer. Briefs were submitted and a hear-
ing held, and on June 8, 1978, the court filed a
written opinion denying plaintiffs' petition.

Defendants argued below and on appeal that the
constitution and laws of the State of Michigan vest
the authority to grant law enforcement powers to
deputies exclusively in the sheriff. Plaintiffs, on
the other hand, argue that the sheriff's discretion
is limited by the public employment relations act,

review the cause of action and the unjustness of the punishment
imposed based upon the record made before the trial board. No new
testimony or evidence shall be received by the arbitrator, unless said
testimony or evidence was unknown at the trial board. If the arbitra-
tor decides that new evidence or testimony should be heard, he shall
at his option take said evidence or testimony or refer the case back to
the trial board. If the arbitrator decides that the punishment imposed
was unduly harsh or severe under all circumstances, he may modify
the findings and punishment accordingly, and his decision shall be
final and binding upon the parties and the effective members."
Defendant alleges that the collective bargaining agreement was the
result of compulsory arbitration under 1969 PA 312, MCL 423.231 *et
seq.;* MSA 17.455(31) *et seq.*

MCL 423.201 *et seq.;* MSA 17.455(1) *et seq.* (hereafter PERA), and by the terms of collective bargaining agreements concluded pursuant to PERA.

The office of sheriff is established by Const 1963, art 7, § 4, which provides in part:

"There shall be elected for four-year terms in each organized county a sheriff, a county clerk, a county treasurer, a register of deeds and a prosecuting attorney, whose duties and powers shall be provided by law."

The sheriff is a peace officer charged with enforcing the laws enacted by the Legislature under the police power, see 80 CJS, § 42, p 211. It is his duty to "wield * * * the executive power for the preservation of the public peace". *Scougale v Sweet,* 124 Mich 311, 322; 82 NW 1061 (1900). See also *White v East Saginaw,* 43 Mich 567; 6 NW 86 (1880). Thus it may be said that the sheriff's powers and duties comprise a part of the police power of the state, which may be delegated to subordinate governmental agencies or divisions, but may not be otherwise delegated or bargained away, being an inherent attribute of sovereignty. See *People v Robinson,* 344 Mich 353; 74 NW2d 41 (1955) (SMITH, J., dissenting), 6 McQuillan, Municipal Corporations (3d ed), §§ 24.07, 24.37, pp 480-482, 552-553. In Michigan, the state's duty of law enforcement for the protection of its citizens has been constitutionally delegated to the county in the person of the sheriff, *Brownstown Twp v Wayne County,* 68 Mich App 244; 242 NW2d 538 (1976). The effect of this constitutional delegation of power was stated in *Brownstown Twp* as follows:

"The office of sheriff is a constitutional office with duties and powers provided by law. Const 1963, art 7,

§ 4, *Labor Mediation Board v Tuscola County Sheriff,* 25 Mich App 159, 162; 181 NW2d 44 (1970). When officers are named in the Constitution they have a known legal character. The Legislature may vary the duties of a constitutional office, but it may not change the duties so as to destroy the power to perform the duties of the office. *Allor v Board of Auditors of County of Wayne,* 43 Mich 76, 102-103; 4 NW 492 (1880). See Murfree, Law of Sheriffs, § 41, p 22." 68 Mich App, at 247-248.

Among the powers provided to the sheriff by statute is the authority to appoint deputies, MCL 51.70; MSA 5.863:

"Each sheriff may appoint 1 or more deputy sheriffs at his pleasure, and may revoke such appointments at any time * * *."[3]

This statutory provision appears to give the sheriff complete discretion in hiring and firing deputies, and has been interpreted as giving him the power to establish rules and regulations for the conduct of deputies. *Eaton County Deputy Sheriffs Ass'n v Eaton County Sheriff,* 37 Mich App 427; 195 NW2d 12 (1971).

The issue before us in the instant case is the interrelationship between PERA, in particular § 15 thereof, and MCL 51.70; MSA 5.863. Section 15 of the public employee relations act, MCL 423.215; MSA 17.455(15), provides:

"A public employer shall bargain collectively with the representatives of its employees as defined in section 11 and is authorized to make and enter into collective bargaining agreements with such representatives. For the purposes of this section, to bargain collectively is the performance of the mutual obligation of

---

[3] This section was amended by 1978 PA 635, effective January 8, 1979, but no substantial change relevant to the issues herein was made by the amendment.

the employer and the representative of the employees to meet at reasonable times and confer in good faith with respect to wages, hours, and other terms and conditions of employment, or the negotiation of an agreement, or any question arising thereunder, and the execution of a written contract, ordinance or resolution incorporating any agreement reached if requested by either party, but such obligation does not compel either party to agree to a proposal or require the making of a concession."

Specifically, the question is whether the collective bargaining requirements of PERA impliedly authorize a sheriff to enter into a collective bargaining agreement empowering an arbitrator of employee grievances to modify the sheriff's order reassigning a deputy to duties not involving law enforcement powers upon finding the deputy guilty of misconduct.

The effect of PERA on the sheriff's discretion in hiring and firing his deputies was discussed by this Court in *Labor Mediation Board v Tuscola County Sheriff,* 25 Mich App 159; 181 NW2d 44 (1970). In that case a deputy filed an unfair labor practices charge, claiming that he was fired because of union organizing activities. The Labor Mediation Board agreed and ordered the deputy reinstated to the same or a similar position with back pay. The sheriff offered to reinstate the deputy to a position as turnkey with the same wages, hours and benefits. The deputy refused, and appealed to the board, which ordered the sheriff to assign the deputy to road patrol duties. This Court held that in so ordering, the board exceeded the powers conferred on it by PERA. The Court noted that the office of sheriff was created by the constitution as the chief law enforcement officer of the county. As such, "he should not be hampered in his administration of the office by any agency or board as to

the actual assignment of duties to be performed by a sheriff's deputy". 25 Mich App, at 164. It should be noted that the Court did not quarrel with the board's power to order reinstatement, but only prevented it from interfering with the sheriff's discretionary powers. Although the case before us involves an arbitrator's award rather than an order of the Labor Mediation Board, the effect in each case is the same: attempted interference, by an outside agency, with the sheriff's discretionary power over specific individual duty assignments within the sheriff's department. Moreover, the case at bar involves an arbitrator overruling the sheriff's decision not to delegate the powers conferred on him by the constitution to a subordinate who had been found guilty of misconduct involving use of a firearm.

The Supreme Court has repeatedly held that PERA controls conflicting statutory provisions, including, *inter alia,* charter provisions of a home rule city and the teacher tenure act. *Rockwell v Crestwood School District Board of Education,* 393 Mich 616; 227 NW2d 736 (1975), *Detroit Police Officers Ass'n v Detroit,* 391 Mich 44; 214 NW2d 803 (1974). However, in *Council No 23, Local 1905, AFSCME v Recorder's Court Judges,* 399 Mich 1; 248 NW2d 220 (1976), the Court refused to order the Recorder's Court to submit the dismissal of a probation officer to binding arbitration under a collective bargaining agreement, finding that MCL 771.10; MSA 28.1140, providing a procedure for removal of a probation officer, was not superseded by PERA. There was no majority opinion, three justices finding that the more specific provision, MCL 771.10, controlled the more general provision, being § 15 of PERA, MCL 423.215; MSA 17.455(15), and one justice finding no conflict be-

tween the two statutes, thus making the procedure in MCL 771.10 the sole means of discharging a probation officer.[4] Both the plurality and the concurring opinions, however, emphasized the danger of interference with the performance of the judicial function if a judge could be required by an arbitrator to continue the employment of a probation officer in whom he no longer had confidence.

In the recent case of *Central Michigan University Faculty Ass'n v Central Michigan University,* 404 Mich 268; 273 NW2d 21 (1978), the Court reiterated the holding that a public employer is subject to the mandatory collective bargaining provisions of PERA, even though the employer is an institution established by the Michigan Constitution. The employer must bargain with regard to all subjects which may be included in the phrase "wages, hours and other terms and conditions of employment", MCL 423.215; MSA 17.455(15), unless bargaining would clearly interfere with those matters, control over which is vested exclusively in the employer by the constitution, *CMU Faculty, supra.* See also *Regents of the University of Michigan v Employment Relations Comm,* 389 Mich 96; 204 NW2d 218 (1973). The Court in *CMU Faculty, supra,* found that the system of evaluation used in selecting teachers for tenure and promotion was one of the terms and conditions of employment and further that is was not exclusively a matter of educational policy over which the board of regents of the university had control by constitutional mandate. See also *Alpena v Alpena Fire Fighters Ass'n,* 56 Mich App 568; 224 NW2d 672 (1974), holding that the number of employees per shift is a bargainable condition of employment, where it

---

[4] The three dissenting justices also found no conflict between the statutes, but concluded that both the statutory pre-dismissal hearing and the post-dismissal contractual procedures could be utilized.

affects the safety of the employees and not merely the safety of the public at large.

The concept that some subjects might be beyond the scope of collective bargaining under PERA because they fall within the powers granted exclusively to the employer by the Michigan Constitution was first enunciated by the Supreme Court in *Regents of the University of Michigan v Employment Relations Comm, supra.* Relying on that opinion, this Court in *Local 1383 of the International Ass'n of Firefighters, AFL-CIO v City of Warren,* 89 Mich App 135; 279 NW2d 556 (1979), held unenforceable a provision in a collective bargaining agreement establishing criteria for promotion, on grounds that it conflicted with a civil service system established by vote of the people pursuant to 1935 PA 78, MCL 38.501 *et seq.;* MSA 5.3351 *et seq.* and Const 1963, art 11, § 6. The Court in *Local 1383* reasoned that because adoption of the civil service system was specifically authorized by the constitution, to permit the parties to supersede its provisions through a collective bargaining agreement would be tantamount to modifying the civil service system without a vote of the people, as required by Const 1963, art 11, § 6. The Court in a footnote stated that its opinion did not prohibit bargaining on the subject, but only implementation of the agreement reached.

Matters which are proposed as subjects for collective bargaining are classified as mandatory, permissive and illegal subjects. The parties are required to bargain in good faith on mandatory subjects, although they need not reach agreement. The parties may bargain by mutual agreement on permissive subjects, but are not required to do so. As to illegal subjects, no contract provision thereon is enforceable, although the parties are

not forbidden to discuss such matters. See *Detroit Police Officers Ass'n v Detroit,* 391 Mich 44, 53-56; 214 NW2d 803 (1974). Mandatory subjects are "wages, hours, and other terms and conditions of employment", MCL 423.215; MSA 17.455(15). Any matter which has a significant impact on the subjects listed or "settles an aspect of the relationship between the employer and employees' is a mandatory subject, except for "those management decisions which are fundamental to the basic direction of a corporate enterprise or which impinge only indirectly upon employment security". *Detroit Police Officers Ass'n v Detroit,* 61 Mich App 487, 492; 233 NW2d 49 (1975), quoting *Allied Chemical & Alkali Workers v Pittsburgh Plate Glass Co,* 404 US 157, 178; 92 S Ct 383; 30 L Ed 2d 341 (1971), and *Fibreboard Paper Products Corp v National Labor Relations Board,* 379 US 203, 223; 85 S Ct 398; 13 L Ed 2d 233 (1964) (Stewart, J., concurring). Illegal subjects are those which would result in an agreement which is in violation of the law, *Detroit Police Officers Ass'n v Detroit, supra,* 391 Mich 44, 54-55, fn 6.

Our Supreme Court has recognized in principle what might be called the exclusive powers doctrine: that there exist matters which are within the exclusive discretion of a public employer and are therefore outside the category of mandatory collective bargaining subjects. *CMU Faculty, supra, U of M Regents, supra.* The Court has not had occasion to decide, however, what matters are within the exclusive powers of an employer and, further, whether those matters are illegal, or merely permissive, subjects of bargaining. If the exclusive powers subjects are permissive, the employer may bargain with regard to them, but is not required to do so. If the employer and em-

ployees agree, an enforceable contract provision may be concluded which deals with the exclusive powers. If, however, such subjects are illegal, no agreement made regarding them is enforceable. See *Detroit Police Officers Ass'n v Detroit, supra,* 391 Mich, at 54-55. Conceivably, the exclusive powers of an employer could embrace both permissive and illegal subjects.

Based on the cases discussed above, we posit—with some trepidation—the following principles which we deem applicable to the case before us: First, the sheriff's power to hire, fire and discipline is not absolute. Rather, his discretion is limited by PERA. See *CMU Faculty, supra.* Second, all terms and conditions of employment are subject to collective bargaining and to any agreement resulting therefrom, unless that bargaining or agreement infringes upon matters which are placed within the exclusive power of the sheriff by the constitution. See *CMU Faculty, supra.* See also *Council No 23 v Recorder's Court Judges, supra.* Third, although the sheriff's power to hire, fire and discipline may be limited by the Legislature, the matter of which of his deputies shall be delegated the powers of law enforcement entrusted to him by the constitution is a matter exclusively within his discretion and inherent in the nature of his office, and may neither be infringed upon by the Legislature nor delegated to a third party, see *Scougale v Sweet, supra, People v Robinson, supra, Labor Mediation Board v Tuscola County Sheriff, supra, Brownstown Twp v Wayne County, supra.*

We therefore conclude that the legislative delegation of the executive police power to the sheriff may not be limited by a collective bargaining agreement as authorized by PERA, but remains vested exclusively in the sheriff. This being so, the arbitrator exceeded his authority under the con-

tract in ordering the sheriff to restore plaintiff McKeon's law enforcement powers before the sheriff, in the exercise of his discretion, was prepared to do so. *Cf. Carmel Central School Dist v Carmel Teacher's Ass'n,* 76 Misc 2d 63; 348 NYS2d 665 (1973). The trial court therefore properly denied the petition for a writ of mandamus.

We are mindful of the fact that the parameters of the exclusive powers doctrine recognized in *CMU Faculty, supra,* have not been definitively established by the Supreme Court. We do not presume to undertake that task here, either in general terms or in terms of the sheriff's powers only. There may well be other subjects within the exclusive power of the sheriff, but we do not reach the issue. We limit our holding to this: that the power to delegate the law enforcement powers entrusted to him by our constitution is vested exclusively in the sheriff, and may not be bargained away or interfered with by any agency or individual.

Affirmed. No costs, a public question being involved.