John **GABORIK**, Plaintiff,

v.

Hubert "Cal" **ROSEMA**, individually and as Sheriff of Van Buren County, Sheriff's Department of Van Buren County; and County of Van Buren, jointly and severally, Defendants.

No. K 83–406.

United States District Court, W.D. Michigan, S.D.

Dec. 28, 1984.

Tat Parish, St. Joseph, Mich., for plaintiff.

Richard VanOrden, Grand Rapids, Mich., for defendants.

## OPINION

ENSLEN, District Judge.

Plaintiff, a former Van Buren County Deputy Sheriff, brings this civil rights action pursuant to 42 U.S.C. § 1983, alleging that Defendants deprived him of his rights under the First and Fourteenth Amendments. Specifically, Plaintiff alleges that his rights to freedom of speech, freedom of political expression, freedom of political association, freedom of personal association, and "other rights" have been violated by Defendants in retaliation for Plaintiff having supported Defendant Rosema's opponent (the incumbent) as a candidate for election as Van Buren County Sheriff. Plaintiff alleges that following the election of Defendant Rosema he was denied deputy sheriff status, placed on a permanent "graveyard" shift and undesirable shift rotation, deprived of the status and benefits of being a road officer and command officer and instead relegated to the status of a jailer, denied overtime, denied court time, denied special details and equipment accorded to other officers, and denied meetings with the sheriff to discuss grievances. Plaintiff contends that this conduct ultimately resulted in his constructive discharge. Named as Defendants are the County of Van Buren, the Sheriff's Department of Van Buren County, and Sheriff Rosema in his individual and official capacities. Presently before the Court is Defendants' Motion for Summary Judgment, filed October 15, 1984.

### I. Standard of Review

To warrant the grant of summary judgment, the moving party bears the burden of establishing the non-existence of any genuine issue of fact that is material to a judgment in his favor. *Adickes v. S.H. Kress & Company*, 398 U.S. 144, 147, 90 S.Ct. 1598, 1603, 26 L.Ed. 142 (1970); *United States v. Articles of Device ... Diapulse*, 527 F.2d 1008, 1011 (CA6 1976); *Nunez v. Superior Oil Company*, 572 F.2d 1119 (CA6 1978); *Tee-Pak, Inc. v. St. Regis Paper Company*, 491 F.2d 1193 (CA6 1974). If no genuine issue as to any material fact is established, the moving party is entitled to judgment as a matter of law. *Chavez v. Noble Drilling Company*, 567 F.2d 287 (CA5 1978); *Irwin v. U.S.*, 558 F.2d 249 (CA6 1977).

In determining whether or not there are issues of fact requiring a trial, "the inferences to be drawn from the un-

derlying facts contained in the (affidavits, attached exhibits, and depositions) must be viewed in the light most favorable to the party opposing the motion." *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962); *Bohn Aluminum & Brass Corporation v. Storm King Corporation,* 303 F.2d 425 (CA6 1962). Even if the basic facts are not disputed, summary judgment may be inappropriate when contradictory inferences may be drawn from them. *United States v. Diebold, supra; EEOC v. United Association of Journeymen & Apprentices of the Plumbing & Pipefitting Industry, Local 189,* 427 F.2d 1091, 1093 (CA6 1970). In making this determination, the Court must make reference to the entire record and all well pleaded allegations are to be accepted as true. *Dayco Corporation v. Goodyear Tire and Rubber Company,* 523 F.2d 389 (CA6 1975); *Holmes v. Insurance Company of North America,* 288 F.Supp. 325 (DC Mich 1968); *Mahlar v. U.S.,* 196 F.Supp. 362 (DC Pa 1961). These guidelines will be adhered to as substantive issues of the motion are examined.

## II. Plaintiff's Claim Against Defendant Van Buren County

Defendant County argues that it cannot be held liable under 42 U.S.C. § 1983 for the acts of Sheriff Rosema because "(a) the actions of Defendant sheriff may not be imputed to the County so as to become County policy; and (b) there can be no official policy of the County with respect to those matters complained of against Defendant sheriff." Defendant contends, in essence, that as to each and every matter of which Plaintiff complains, the sheriff is vested by statute and case law with exclusive authority and is free from constraint or guidance by the County; therefore, Defendant Rosema's actions cannot be said to represent County policy or custom. Plaintiff responds by arguing that the actions of Defendant Rosema in areas where he is the "final authority" or "ultimate repository of County power" do represent "official policy" for which the County may be held liable.

■ In *Monell v. Department of Social Services of the City of New York,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), the Supreme Court held that Congress intended municipalities and other local government units to be included among those "persons" to whom 42 U.S.C. § 1983 applies. This holding has been applied to counties by the Sixth Circuit. *Hays v. Jefferson County, Kentucky,* 668 F.2d 869 (CA6 1982), *cert. den.,* 459 U.S. 833, 103 S.Ct. 75, 74 L.Ed.2d 73. The rule, as stated in *Monell, supra,* 436 U.S. at 690–691 and 694, 98 S.Ct. at 2035–2036 and 2037:

> Local governing bodies, therefore, can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where, as here, the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers. Moreover, although the touchstone of a § 1983 action against a government body is an allegation that official policy is responsible for a deprivation of rights protected by the Constitution, local governments, like every other § 1983 "person", by the very terms of the statute, may be sued for constitutional deprivations visited pursuant to governmental "custom" even though such a custom has not received formal approval through the body's official decisionmaking channels.

> \* \* \* \* \* \*

> ... [A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983.

■ The Supreme Court has not addressed the question whether a county may be held liable under § 1983 for the actions of its sheriff. Case law from this and other jurisdictions on this issue, which has been researched and discussed at length by

the parties herein, is not unequivocal. However, a recent decision by the Sixth Circuit Court of Appeals, which has not been cited by the parties, directs this Court to the conclusion that Defendant County may be held liable for the acts of Defendant Rosema.

*Pembaur v. City of Cincinnati, et al,* 746 F.2d 337 (CA6 1984) involved a § 1983 action for alleged deprivation of Fourth and Fourteenth Amendment rights. Plaintiff sought, in part, to impose liability on a county for the actions of its sheriff. The trial court concluded that the county could not be held liable for the policies of the sheriff because the sheriff was not subject to the control of the Board of Commissioners, the county's governing body. The court reasoned that the sheriff's powers and duties were established by the state legislature, which presumably rendered him a state rather than county official. The Sixth Circuit affirmed the dismissal of the county,[1] but not until it first concluded that the trial court erred in ruling that the county could not be held liable for the actions of its sheriff:

> In *Monell v. Department of Social Services,* 436 U.S. 658, 694 [98 S.Ct. 2018, 2037, 56 L.Ed.2d 611] (1978), the Supreme Court held that a local government can be liable in a § 1983 action when its official policy or governmental custom is responsible for a deprivation of constitutional rights. Apparently recognizing that a local government's "official policy" can originate from more than one source, the Court stated "... it is when execution of a government's policy or custom, *whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official poli-*

cy, inflicts the injury that the government as an entity is responsible under § 1983." *Id.* (emphasis added). *See also, Owen v. City of Independence,* 445 U.S. [622,] 657–658 [100 S.Ct. 1398, 1418–1419, 63 L.Ed.2d 673] (1980). Thus, the Board's lack of control does not necessarily preclude a finding of liability on the part of the County. We must determine whether the nature and duties of the Sheriff are such that his acts may fairly be said to represent the county's official policy with respect to the specific subject matter.

Initially, we note that the district court is incorrect to the extent that its decision implies that the Sheriff is not a County official. The Sheriff is elected by the residents of the County, Ohio Rev.Code Ann. § 311.01 (Baldwin 1982), and serves as the "chief law enforcement officer of the county." 1962 Op.Att'y.Gen. No. 3109. He submits his budget requests to the Board, Ohio Rev.Code Ann. § 311.20, which in turn furnishes his office, books, furniture, and other materials. Ohio Rev.Code Ann. § 311.06. His salary and all training expenses are also paid out of the general county fund. Ohio Rev.Code Ann. §§ 325.01–06. Although none of these factors is itself determinative, we believe it is obvious that the Sheriff is a County official. Moreover, we believe that the duties of the Sheriff, as enumerated in Ohio Rev.Code Ann. § 311.67, and his responsibility for the neglect of duty or misconduct of office of each of his deputies, *see* Ohio Rev.Code Ann. § 311.-05, clearly indicate that the Sheriff can establish county policy in some areas. We conclude, therefore, that, in a proper case, the Sheriff's acts represent the offi-

---

**1.** The Court ultimately concluded that Plaintiff had failed, at trial, to carry his burden of identifying the policy, connecting the policy to the county, and showing that the particular injury was incurred because of the execution of that policy. As stated by the Court at page 7 of the slip opinion:

> We believe that Pembaur failed to prove the existence of a county policy in this case. Pembaur claims that the deputy sheriffs acted pursuant to the policies of the Sheriff and Prosecutor by forcing entry into the medical

center. Pembaur has failed to establish, however, anything more than that, on this *one occasion,* the Prosecutor and the Sheriff decided to force entry into his office.... That single, discrete decision is insufficient, by itself, to establish that the Prosecutor, Sheriff, or both were implementing a governmental policy. Accordingly, the district court properly dismissed the claim against the County. (Citation and footnote omitted) (Emphasis supplied).

cial policy of Hamilton County and, as such, may be the basis for the imposition of § 1983 liability. *Id* at slip opinion pp. 5–7. (footnotes omitted) (emphasis supplied).

The holding in *Pembaur* is consistent with the rationale of the Fifth Circuit in two recent decisions: *Familias Unidas v. Briscoe*, 619 F.2d 391, 404 (CA5 1980) (in areas in which an elected county official such as a sheriff is, alone, the "final authority or ultimate repository of county power, his official conduct and decisions must necessarily be considered those of one 'whose edicts or acts may fairly be said to represent official policy' for which the county may be held responsible under section 1983."); *Van Ooteghem v. Gray*, 628 F.2d 488, 494–495 (CA5 1980), *cert. den.*, 455 U.S. 909, 102 S.Ct. 1255, 71 L.Ed.2d 447 ("[t]here is little doubt as to the wisdom of holding a county liable for an official's acts undertaken in those areas in which the official is the 'final authority' or 'ultimate repository of county power.' The only way . . . any local government entity, can establish 'official policy' is through the actions of the individual, or group of individuals, who possess final authority within that body. . . . A county must be held accountable for more than its officially-codified policies; in cases where the written law of a government entity vests unbridled authority in certain areas in an individual, his decisions become the controlling law and official policy of the entity."). *See also, Echols v. Strickland*, US District Court S.Tex. 9–26–80 Memorandum Opinion, reprinted in relevant portion at 49 USLW 2275.

In the instant case, Sheriff Rosema occupies a constitutionally created office to which he was elected by the general public of the county. Mich. Const.1963, Art. 7, Sec. 4; *Labor Mediation Board v. Tuscola County Sheriff*, 25 Mich.App. 159, 181 N.W.2d 44 (1970); *National Union of Police Officers Local 502–M, AFL–CIO v. Wayne County Board of Commissioners*, 93 Mich.App. 76, 286 N.W.2d 242 (1979); *Brownstown Township v. Wayne County*, 68 Mich.App. 244, 242 N.W.2d 538 (1976). He is the chief police officer having to do with law enforcement in the county. *Labor Mediation Board, supra*, 25 Mich.App. at 164, 181 N.W.2d 44; *National Union of Police Officers, supra*, 93 Mich.App. at 82, 286 N.W.2d 242. Among the powers of the sheriff provided by statute are authority to hire, fire, and discipline deputies, and to establish rules and regulations for their conduct while employed. M.C.L.A. § 51.70; *National Union of Police Officers, supra*, 93 Mich.App. at 83, 286 N.W.2d 242; *Labor Mediation Board, supra*, 25 Mich.App. at 162, 181 N.W.2d 44; *Eaton County Deputy Sheriffs Association v. Eaton County Sheriff*, 37 Mich.App. 427, 195 N.W.2d 12 (1971). The legislature may by statute vary the duties of the sheriff, but it may not change the duties and powers in a way which changes the legal character of the office. *Brownstown Township, supra*, 68 Mich.App. at 248, 242 N.W.2d 538; *Fraternal Order of Police, Ionia County Lodge No. 157 v. Bensinger*, 122 Mich.App. 437, 444, 333 N.W.2d 73 (1983). The sheriff has charge and custody of the jails of his county, and of the prisoners therein. M.C.L.A. § 51.75. Charges and expenses associated with maintaining prisoners are paid from the county treasury. M.C.L.A. § 801.4. The salary of the sheriff is set by the County Board of Commissioners, and is paid out of the general fund in the county treasury. M.C.L.A. § 45.401. The Board of Commissioners provides necessary office supplies to the sheriff. M.C.L.A. § 45.405. The sheriff may be allowed fees for services, including travel, which are to be paid from the county treasury. M.C.L.A. § 775.4; § 775.6.

As it was in *Pembaur*, it is obvious in the instant action that Sheriff Rosema is a county official. Moreover, his nearly unbridled authority over the hiring, firing, disciplining, and regulating of deputies indicates that the sheriff can establish county policy in this regard. He is, indeed, the "final authority" or "ultimate repository of county power" in these areas. I conclude, therefore, that Sheriff Rosema's acts in the areas involved herein may be found to represent the official policy of Van Buren

County and, as such, may be the basis for the imposition of § 1983 liability.

Plaintiff will, of course, be required at trial to establish the existence of a policy, connect that policy to Van Buren County, and show that a particular injury was incurred because of the execution of the policy. *See, e.g., Pembaur, supra; Polk v. Dodson,* 454 U.S. 312, 102 S.Ct. 445, 70 L.Ed.2d 509 (1981); *Wellington v. Daniels,* 717 F.2d 932 (CA4 1983).

### III. Plaintiff's Claim Against Defendant Van Buren County Sheriff's Department

Defendants next contend that Plaintiff's claim against the Van Buren County Sheriff's Department must fail because, as a matter of law, there is no county agency legally identifiable as a "Sheriff's Department."

■ While it may very well be true that there is no such legal entity known as the "Van Buren County Sheriff's Department", for purposes of this motion I believe there exist genuine issues of material fact on this question which must be left for resolution by the trier of fact. *Bayer v. Malcolm County Sheriff,* 29 Mich.App. 171, 185 N.W.2d 40 (1970) (refers to a sheriff's department as an "agency of the county"); *Simmons v. Stanton,* 502 F.Supp. 932 (WD Mich 1980) (numerous references to the Oceana County Sheriff's Department as an entity). Should it appear at trial that Plaintiff has failed to present proofs as to the existence of the Sheriff's Department, Defendants will be free to renew their motion.

### IV. Plaintiff's Claim Against Defendant Rosema

Defendants' final argument is that Plaintiff's claim against Defendant Rosema is controlled by Michigan's 2-year statute of limitations governing claims of misconduct brought against a Sheriff. M.C.L.A. § 600.5805(5). Plaintiff contends that his claim against Sheriff Rosema is governed by Michigan's 3-year statute of limitations for actions involving injury to a person or property. M.C.L.A. § 600.5805(8). Plaintiff terminated his employment on August 1 or August 3, 1981. His complaint was filed August 15, 1983. Under Defendants' theory, Plaintiff's claim against Defendant Rosema is barred; under Plaintiff's theory, it is not.

■ Congress did not enact a statute of limitations for actions brought under 42 U.S.C. § 1983. Therefore, federal courts must apply state statutes of limitations for actions brought under this Act. 42 U.S.C. § 1988; *Board of Regents of the University of the State of New York v. Tomanio,* 446 U.S. 478, 100 S.Ct. 1790, 64 L.Ed.2d 440 (1979); *Johnson v. Railway Express Agency,* 421 U.S. 454, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1974); *Leithauser v. City of Madison Heights,* 577 F.Supp. 994 (ED Mich 1984). In *Johnson v. Railway Express Agency, supra,* 421 U.S. at 462, 95 S.Ct. at 1721, this was said to entail identifying and applying the "most appropriate" state statute of limitations. In *Board of Regents v. Tomanio, supra,* 446 U.S. at 483–484, 100 S.Ct. at 1795, the court stated the goal to be selection of the "state law of limitations governing an analogous cause of action". In this case, since Michigan is the forum state, the law of Michigan will be applied. *Marlowe v. Fisher Body,* 489 F.2d 1057 (CA6 1973); *Krum v. Sheppard,* 255 F.Supp. 994 (WD Mich 1966), *aff'd,* 407 F.2d 490 (CA6 1967); *Kilgore v. City of Mansfield, Ohio,* 679 F.2d 632 (CA6 1982).

M.C.L.A. § 600.5805(5) provides:
The period of limitations is 2 years for an action against a sheriff charging misconduct or neglect of office by the sheriff or the sheriff's deputies.

M.C.L.A. § 600.5805(8) provides:
The period of limitations is 3 years after the time of the death or injury for all actions to recover damages for the death of a person, or for injury to a person or property.

Although opinions from the Sixth Circuit and the Michigan federal district courts concerning the appropriate limitations period for § 1983 actions have been somewhat enigmatic, careful consideration of this case law (and case law from other circuits as well as the United States Supreme

Court) and the claims of Plaintiff leads me to conclude that the 3-year statute of limitations contained in M.C.L.A. § 600.5805(8) is applicable herein. Plaintiff's claim against Defendant Rosema, therefore, is not barred as untimely.

In *Krum v. Sheppard,* 255 F.Supp. 994 (WD Mich 1966), *aff'd,* 407 F.2d 490 (CA6 1967), the Sixth Circuit affirmed, "for the reasons set forth" by the trial court, a ruling by Judge Fox that the 3-year statute of limitations barred a cause of action for an alleged illegal search of a car, illegal arrest of the plaintiff, filing of a false complaint against the plaintiff, and testifying falsely against the plaintiff at preliminary hearings and at trial. After considering the various provisions of Michigan's statutes of limitations, Judge Fox concluded that an action for damages for deprivation of civil rights is an action for damages for "injuries to persons" within the meaning of the Michigan 3-year statute of limitations. *Id* at 997–999. Judge Fox rejected a specific 2-year statute of limitations for false arrest or malicious prosecution, stating that a claim under the Civil Rights Act is broader in nature than a tort action governed by the shorter limitations. *Id.* at 996, fn 1.

The court in *Madison v. Wood,* 410 F.2d 564 (CA6 1969) held that the 3-year statute of limitations applied to an action by a police officer who alleged he was unlawfully demoted from sergeant to patrolman. Plaintiff essentially alleged denial of the protection under the Fourteenth Amendment by tortious invasion of his right to pursue his chosen profession. The court cited *Krum* in concluding that plaintiff's claim that he was "deprived of personal liberty through alleged discrimination" amounted to a "claim to recover damages for injury wrongfully done to the person". *Id.* at 567.

*Krum* was again cited in *Marlowe v. Fisher Body,* 489 F.2d 1057 (CA6 1973), an action brought pursuant to 42 U.S.C. § 1981 for alleged employment discrimination involving failure to grant advancement and overtime. The court ruled that the reference in plaintiff's complaint to breaches of contract "does not alter the fact that a deprivation of civil rights is primarily a violation of personal rather than property rights. Accordingly, the Michigan 3-year statute of limitations ... applies." *Id.* at 1063.

These Sixth Circuit cases have been cited repeatedly by the Michigan federal district courts in holding the 3-year statute of limitations applicable to various § 1983 factual situations. *An-Ti Chai v. Michigan Technological University,* 493 F.Supp. 1137 (WD Mich 1980) (allegations of discriminatory treatment and illegal termination of employment by former non-tenured professor against university and three of its officers); *Weldon v. Board of Education of the School District of the City of Detroit,* 403 F.Supp. 436 (ED Mich 1975) (discharged teacher sued Board of Education and teachers' union charging racial discrimination in violation of the Fourteenth Amendment); *Kurzawa v. Mueller,* 545 F.Supp. 1254 (ED Mich 1982), *aff'd,* 732 F.2d 1456 (CA6 1984) (allegations of abuse or misuse of state procedures and abuse of office by state officials resulting from the termination of parental rights); *Abshier v. Tichvon,* 500 F.Supp. 444 (ED Mich 1980) (alleged beatings by two county sheriff's deputies and two state police officers while plaintiff was held in a county jail—county sheriff also named as a defendant). Judge Pratt, in *Gordon v. City of Warren,* 415 F.Supp. 556, 560 (ED Mich 1976), *rev'd. on other grounds,* 579 F.2d 386 (CA6 1978) went so far as to opine that the Sixth Circuit in *Madison* and *Krum* "established the rule [at least in Michigan] that a wrong alleged under the Civil Rights Act is a constitutional wrong, and that such a wrong is personal in nature" and subject to the 3-year statute of limitations for "injuries to the person".

I believe the rationale of *Krum, Madison,* and *Marlowe,* and the district court cases cited—looking at the § 1983 action as a claim based on injury to the person due to the deprivation of civil rights rather than as a claim based on the underlying allegedly tortious facts—to be sound. To characterize Plaintiff Gaborik's Complaint as involving merely claims for "misconduct"

against Defendant Rosema would be to deny the constitutional significance of this allegation. The wrong alleged is constitutional, and it is personal. It should be controlled by application of the Michigan 3-year statute of limitations.

A recent Supreme Court decision, the existence of which the parties are apparently unaware, lends support to the applicability of the 3-year statute of limitations in this action. *Burnett v. Grattan*, 468 U.S. ——, 104 S.Ct. 2924, 82 L.Ed.2d 36 (1984) involved whether a state law establishing a procedure for administrative resolution of employment discrimination complaints provided an appropriate statute of limitations for actions brought under the Civil Rights Act. In holding that Maryland's 3-year statute of limitations for all civil actions for which a statutory limitations period is not otherwise provided should have been applied instead of the 6-month limitations period for administrative actions, the Supreme Court made the following general statements regarding the choice of a limitations period for civil rights actions:

In the Civil Rights Acts, Congress established causes of action arising out of rights and duties under the Constitution and federal statutes. These causes of action exist independent of any legal or administrative relief that may be available as a matter of federal or state law. They are judicially enforceable in the first instance. The statutes are characterized by broadly inclusive language. They do not limit who may bring suit, do not limit the cause of action to a circumscribed set of facts, nor do they preclude money damages or injunctive relief. An appropriate limitations period must be responsive to these characteristics of litigation under the federal statutes. A state law is not "appropriate" if it fails to take into account practicalities that are not involved in litigating federal civil rights claims and policies that are analogous to the goals of the Civil Rights Acts. *Id.* at 468 U.S. at ——–——, 104 S.Ct. at 2930, 82 L.Ed.2d at 44–45.

The court rejected a policy of prompt assertion and resolution of public employee disputes in particular, finding that such a policy, "keyed to a classification of plaintiffs", could not preempt the broad remedial purposes of the Civil Rights Acts "which make no distinction among persons who may look to the court to vindicate their federal constitutional rights". *Id.* at 468 U.S. at ——, 104 S.Ct. at 2932, 82 L.Ed.2d at 47. Moreover, a policy of minimizing the disruption of state officials' attention from their duties was found to be inconsistent with the Civil Rights Acts' objective of ensuring that individuals whose federal constitutional or statutory rights have been violated may receive monetary or injunctive relief. *Id.* at 468 U.S. at ——–——, 104 S.Ct. at 2931–2932, 82 L.Ed.2d at 47–48. In footnote, the Court quoted *Pauk v. Board of Trustees*, 654 F.2d 856, 862 (CA2 1981), cert. den., 455 U.S. 1000, 102 S.Ct. 1631, 71 L.Ed.2d 866:

[i]t would be anomalous for a federal court to apply a state policy restricting remedies against public officials to a federal statute that is designed to augment remedies against those officials, especially a federal statute that affords remedies for the protection of constitutional rights. *Id.* at 468 U.S. at ——, fn. 18, 104 S.Ct. at 2932, fn. 18, 82 L.Ed.2d at 48, fn. 18.

While the instant action is divergent from *Burnett* factually, the policy reasons behind the decision are equally applicable herein. To apply the 2-year statute of limitations to Plaintiff Gaborik would be to allow him a shorter period of limitations solely on the ground that he is a plaintiff suing a county sheriff; the same civil rights complaint against a non-sheriff would have a 3-year limitations period. Such an anomalous result would do disservice to the policies behind the creation of a § 1983 cause of action.

It should be noted that the Supreme Court has recently granted certiorari in *Knoll v. Springfield Township School District*, 699 F.2d 137 (CA3 1983), cert. granted, —— U.S. ——, 104 S.Ct. 3571, 82 L.Ed.2d 870 (7/2/84), where the court held that Pennsylvania's 6-year omnibus statute of limitations would be applied to claims

for employment discrimination brought under § 1983, rather than the state's 6-month statute of limitations governing suits against state officials for acts done in the execution of office. Hopefully, the Supreme Court's forthcoming decision will provide further guidance for situations such as that at bar.

The Court is not unmindful of the Sixth Circuit and Michigan federal district court decisions apparently in conflict with the reasoning adopted herein. *See, e.g., Mulligan v. Schlachter*, 389 F.2d 231 (CA6 1968) (applied Michigan's 2-year limitations period for actions charging false imprisonment, malicious prosecution, or misconduct of sheriffs and their deputies to an action against a detective, a sergeant, a lieutenant, and an attorney for conspiracy to deprive the plaintiff of constitutional rights by arrest without probable cause, seizure of property without probable cause, and inadequate attorney representation at trial); *Leithauser v. City of Madison Heights*, 577 F.Supp. 994 (ED Mich 1984) (trial court rejected Michigan's 3-year statute of limitations for injuries to person and property, and instead applied 2-year statute of limitations applicable to actions for false arrest and malicious prosecution).

Even applying the technique used in these actions—looking restrictively at the common law action underlying the § 1983 claim to determine the most analogous statute of limitations—I find Michigan's 3-year limitations period applicable. Plaintiff alleges that he was retaliated against for his political support of an incumbent sheriff. The alleged retaliation, outlined previously, took the form of employment discrimination, which is governed by the 3-year statute of limitations found in M.C.L.A. § 600.-5805(8). *Gilbert v. Grand Trunk Western Railroad*, 95 Mich.App. 308, 290 N.W.2d 426 (1980). To conclude that this action is merely one claiming "misconduct" by Defendant sheriff would require such a broad reading of that term as to result in every action naming a sheriff as a defendant being classified in that manner. If such a result were intended by the Legislature, statutory language to that effect would have been included. Assuming, arguendo, that it can be said that to some extent Plaintiff's claims against Defendant Rosema include claims for "misconduct", the gist of his claims plainly involve allegations of discrimination in employment practices; thereby making the statute of limitations applicable to employment discrimination actions the "most analogous". Therefore, even under the rationale of *Mulligan* and *Leithauser*, I believe this action would be governed by the 3-year limitations period.

Defendants' Motion for Summary Judgment is denied in its entirety. An appropriate Order will be entered forthwith.