MAPLE GROVE TOWNSHIP v MISTEGUAY CREEK INTERCOUNTY
DRAIN BOARD

Docket No. 304965. Submitted September 6, 2012, at Detroit. Decided
September 18, 2012. Approved for publication October 23, 2012, at
9:15 a.m.

Maple Grove Township and seven other townships brought an
action in the Genesee Circuit Court against the Misteguay
Creek Intercounty Drain Board, seeking an order of superin-
tending control over the drain board. The dispute arose when
Albee Township, located in Saginaw County, petitioned the
drain board, seeking the "cleaning out, relocating, widening,
deepening, straightening, tiling, extending or relocating along a
highway, adding branches, and/or installing, maintaining or
repairing structures or mechanical devices to the [Misteguay
Creek Intercounty Drain]," located in the counties of Shiawas-
see, Genesee, and Saginaw. The drain board held a practicability
hearing pursuant to § 192 of the Drain Code, MCL 280.192, on
June 3, 2010, determined that the drain improvements were
practicable, and entered an order of practicability. The drain
board then scheduled a necessity hearing to determine whether
the improvements were "necessary for the good of the public
health, convenience, or welfare" pursuant to § 122 of the Drain
Code, MCL 280.122. When the number of people seeking to
attend the necessity hearing exceeded the capacity of the
facility, the hearing was suspended and an announcement was
made that the hearing would be rescheduled to occur at a larger
facility. Before the necessity hearing was rescheduled, plaintiffs
filed their action. Plaintiffs alleged that after the practicability
hearing the drain board had sought to increase the size of the
proposed drainage district and increase the estimated cost of
the project from $2.5 million to $6.1 million, plus additional
costs for contingencies. Plaintiffs alleged that a second practi-
cability hearing had to be held with regard to the larger, more
costly project. Plaintiffs also alleged that Albee Township's
petition failed to satisfy the requirements of §§ 121 and 192 of
the Drain Code, MCL 280.121 and 280.192, respectively, to
properly petition for the drainage project and, therefore, the
drain board lacked jurisdiction over the proposed project. The

drain board sought summary disposition pursuant to MCR 2.116(C)(5), (8), and (10), arguing that plaintiffs lacked standing to assert claims on behalf of individuals who were not parties to the action and that the petition was sufficient to allow the drain board to proceed because MCL 280.192 permits a sole township to petition for maintenance and improvements to an intercounty drain. The drain board argued that the practicability hearing had appropriately focused on whether the petition and proposed improvements were practicable and that the issue regarding whether to add lands to the drainage district was not to be addressed unless and until a determination of practicability had been made. The drain board thus asserted that only one practicability hearing was required and necessary. The court, Geoffrey L. Neithercut, J., agreed with the drain board and granted its motion for summary disposition. The townships of Maple Grove, Hazelton, Venice, New Haven, and Caledonia appealed.

The Court of Appeals *held*:

The trial court properly held that the petition filed by Albee Township was sufficient to confer jurisdiction on the drain board to conduct proceedings pursuant to the Drain Code, a second practicability hearing was not statutorily required, and a hearing regarding the proposed addition of land to the drainage district was not required to be held before a hearing to determine the necessity of the proposed drainage project.

1. Plaintiffs abandoned any claim of error with respect to the trial court's decision granting summary disposition under MCR 2.116(C)(5) because they failed to provide any substantive argument challenging the decision.

2. The petition filed by Albee Township sought the maintenance and improvement of an established drain. The trial court properly held that MCL 280.121, which explicitly applies to a petition to locate, establish, and construct a drain, was inapplicable.

3. Because a petition was filed, the provisions of MCL 280.196(4) and (5) that permit the drain board to proceed without a petition were properly held to be inapplicable by the trial court.

4. The trial court properly held that MCL 280.196(9) was inapplicable because Albee Township's petition sought more than the mere inspection, maintenance, and repair of the drain and did not indicate that the township would be responsible for the entire cost of the proposed drain project.

5. The petition filed by Albee Township was filed pursuant to MCL 280.192. The trial court properly held that, under the circumstances of this action, the statute allowed the petition to be signed solely by the township. The petition sought "cleaning out, relocating, widening, deepening, straightening, tiling, extending or relocating along a highway, adding branches, and/or installing, maintaining or repairing structures or mechanical devices to the drain" and asserted that the project was "necessary and conducive to the public health, convenience, or welfare" of Albee Township. The petition also asserted that the petition was authorized by the township's governing body and that the township "will be liable to assessments at large for at least a percentage of the total amount to be assessed for the cost of the proposed drain project." The petition used the same relevant language as the statute, which explicitly provides a method for initiating a drainage project solely by a city, village, or township when the project is necessary to the public health. The fact that other statutory provisions provide alternative methods for initiating a drainage project does not negate or render nugatory the applicable language of MCL 280.192. The language allowing a single city, village, or township to sign a petition does not render the language permitting a combination of municipalities to sign a petition mere surplusage.

6. The trial court properly held that there was no merit to plaintiffs' argument that a second practicability hearing must be held because the size and cost of the project increased after the practicability hearing. MCL 280.104 clearly provides that the scope of a proposed drainage project, including the area encompassed by the drainage district and the cost of the project, is not determined until a surveyor or engineer conducts a survey after the drain board determines at a practicability hearing that a proposed project is practicable.

7. The trial court properly held that there was no merit to plaintiff's argument that MCL 280.197(2) requires a hearing regarding the proposed addition of land to a drainage district to be held before a hearing to determine the necessity of the proposed project. MCL 280.72 and MCL 280.197 indicate that a necessity hearing precedes a hearing to determine whether to add land to a drainage district.

Affirmed.

1. DRAINS — DRAIN CODE — PETITIONS TO ESTABLISH DRAINS.

The provisions of § 121 of the Drain Code pertain to new drains rather than preexisting drains (MCL 280.121).

2. DRAINS — DRAIN CODE — MAINTENANCE AND REPAIR — PETITIONS AND RESOLUTIONS.

> The provisions of subsections (4) and (5) of § 196 of the Drain Code regarding the maintenance and repair of a drain by a drainage board apply when a petition or resolution for such maintenance and repair has not been filed and are inapplicable when one has been filed (MCL 280.196[4] and [5]).

3. DRAINS — DRAIN CODE — PETITIONS TO INITIATE DRAINAGE PROJECTS.

> Section 192 of the Drain Code explicitly provides a method for initiating a drainage project with a petition signed solely by a city, village, or township when the project is necessary for the public health of one or more cities, villages, or townships; the fact that other provisions of the Drain Code provide alternative methods for initiating a drainage project does not negate or render nugatory the language of § 192; the statute also provides a second method for initiating a drainage project that allows a petition for the project to be signed by any combination of such municipalities if the municipalities will be liable to assessments at large for a percentage of the total amount to be assessed for the cost of the proposed work; the statutory language allowing a single city, village, or township to sign a petition does not render the statutory language permitting a combination of municipalities to sign a petition mere surplusage (MCL 280.192).

4. DRAINS — DRAINAGE BOARDS — PROPOSED PROJECTS — PRACTICABILITY HEARINGS — SURVEYS.

> The purposes of a practicability hearing by a drainage board are to determine the sufficiency of the signatures on an application for a drainage project and to determine whether the proposed project is practicable; the scope of a proposed drainage project, including the area encompassed in the drainage district and the cost of the project, is not determined until a surveyor or engineer conducts a survey after the drainage board determines at a practicability hearing that the proposed project is practicable; a second practicability hearing is not required when such a survey results in an increase in the scope of the proposed project (MCL 280.103; MCL 280.104; MCL 280.192).

5. DRAINS — DRAIN CODE — NECESSITY HEARINGS — HEARING REGARDING ENLARGEMENT OF DRAINAGE DISTRICTS.

> The Drain Code does not require a hearing to determine the proposed addition of land to a drainage district to be held before a hearing to determine the necessity of a proposed drainage project;

a necessity hearing precedes a hearing to determine whether to add land to a drainage district (MCL 280.72; MCL 280.197).

*Bauckham, Sparks, Lohrstorfer, Thall & Seeber, P.C.* (by *John H. Bauckham* and *John K. Lohrstorfer*), for Maple Grove Township, Hazelton Township, Venice Township, New Haven Township, and Caledonia Township.

*The Hubbard Law Firm, P.C.* (by *Michael G. Woodworth* and *Michelle M. Brya*), for the Misteguay Creek Intercounty Drain Board.

Before: CAVANAGH, P.J., and SAAD and DONOFRIO, JJ.

PER CURIAM. The plaintiffs townships of Maple Grove, Hazelton, Venice, New Haven, and Caledonia appeal as of right the trial court's order granting summary disposition for defendant, Misteguay Creek Intercounty Drain Board (the Drain Board), in this action involving the Drain Code, MCL 280.1 *et seq.* Because a petition filed by Albee Township was sufficient to confer jurisdiction on the Drain Board to conduct proceedings pursuant to the Drain Code, a second practicability hearing was not statutorily required, and a hearing regarding the proposed addition of land to the drainage district was not required to be held before a hearing to determine the necessity of the proposed drainage project, we affirm.

This case involves the Misteguay Creek Intercounty Drain, located in the counties of Shiawassee, Genesee, and Saginaw. On April 13, 2010, Saginaw County's Albee Township filed a petition seeking the "cleaning out, relocating, widening, deepening, straightening, tiling, extending or relocating along a highway, adding branches, and/or installing, maintaining or repairing structures or mechanical devices

to the drain . . . ." Following a June 3, 2010, practicability hearing pursuant to MCL 280.192, the Drain Board determined that the drain improvements were practicable and entered an order of practicability. Thereafter, the Drain Board scheduled a necessity hearing to determine whether the improvements were "necessary for the good of the public health, convenience, or welfare" pursuant to MCL 280.122. Because of the large number of attendees at the April 14, 2011, necessity hearing and applicable fire marshall regulations, the hearing was suspended and an announcement was made that the hearing would be rescheduled to occur at a facility capable of accommodating the large crowd.

On May 2, 2011, before the necessity hearing was rescheduled, plaintiffs[1] filed a complaint and petition for an order of superintending control over the Drain Board. In their complaint and petition, and their first amendment thereto, plaintiffs asserted that after the practicability hearing, the Drain Board sought to increase the size of the proposed drainage district and increase the estimated cost of the project from $2.5 million to $6.1 million plus additional costs for contingencies. Plaintiffs alleged that a second practicability hearing must be held regarding the larger, more costly project. Plaintiffs also alleged that the failure of the petition to satisfy the requisites of MCL 280.121 and MCL 280.192 to properly petition for the drainage project divested the Drain Board of jurisdiction over the project.

---

[1] Although plaintiffs Clayton Charter Township, Montrose Township, and Flushing Township are not parties to this appeal, they participated in the lower court proceedings. For the sake of simplicity, our use of the term "plaintiffs" does not differentiate between the parties that participated below and those participating in this appeal.

In response, the Drain Board filed a motion for summary disposition pursuant to MCR 2.116(C)(5), (8), and (10). With respect to subrule (C)(5), the Drain Board argued that plaintiffs lacked standing to assert claims on behalf of individuals who were not parties to the action. Regarding subrules (C)(8) and (10), the Drain Board argued that the practicability hearing appropriately focused on whether the petition and proposed improvements were practicable and that the issue whether to add lands to a drainage district was not to be addressed unless and until a determination of practicability was made. Thus, the Drain Board contended that only one practicability hearing was required and necessary. The Drain Board also asserted that Albee Township's petition was sufficient to allow the Drain Board to proceed because MCL 280.192 permits a sole township to petition for maintenance and improvements to an intercounty drain. The trial court agreed and granted the Drain Board's motion.

We review de novo a trial court's decision on a motion for summary disposition. *Oliver v Smith*, 290 Mich App 678, 683; 810 NW2d 57 (2010). A motion under "MCR 2.116(C)(8) tests the legal sufficiency of the claim on the pleadings alone to determine whether the plaintiff has stated a claim on which relief may be granted." *Spiek v Dep't of Transp*, 456 Mich 331, 337; 572 NW2d 201 (1998). Summary disposition under subrule (C)(8) is appropriate "if no factual development could justify the plaintiff's claim for relief." *Id.* A motion for summary disposition under MCR 2.116(C)(10) "tests the factual support of a plaintiffs' claim." *Id.* In reviewing a motion under subrule (C)(10), we consider "the pleadings, admissions, affidavits, and other relevant documentary evidence of record in the light most favorable to the nonmoving party to determine whether any genuine

issue of material fact exists to warrant a trial." *Walsh v Taylor*, 263 Mich App 618, 621; 689 NW2d 506 (2004).[2]

Plaintiffs first argue that Albee Township's petition was insufficient to confer jurisdiction on the Drain Board because it failed to comply with the requirements of several Drain Code statutes. We review de novo as a question of law an issue involving statutory interpretation. *Johnson v QFD, Inc*, 292 Mich App 359, 364; 807 NW2d 719 (2011). "When interpreting a statute, this Court's goal is to ascertain and give effect to the intent of the Legislature by enforcing plain language as it is written." *Detroit v Detroit Plaza Ltd Partnership*, 273 Mich App 260, 276; 730 NW2d 523 (2006). When statutory language is clear and unambiguous, courts must apply the plain language to the circumstances of the case, and judicial construction is unnecessary. *Dep't of Transp v Tomkins*, 481 Mich 184, 191; 749 NW2d 716 (2008). Courts should avoid an interpretation that would render any part of a statute surplusage or nugatory and must give effect to every word and phrase in a statute. *Dep't of Environmental Quality v Worth Twp*, 491 Mich 227, 238; 814 NW2d 646 (2012).

Plaintiffs contend that Albee Township's petition failed to comply with MCL 280.121, which provides, in relevant part:

> After an intercounty drainage district has been established and the order therefor filed as hereinbefore provided, a petition to locate, establish and construct a drain may be filed with any commissioner having jurisdiction of any of the lands designated in such order as constituting

---

[2] Because plaintiffs failed to provide any substantive argument challenging the trial court's decision granting summary disposition under MCR 2.116(C)(5), they have abandoned any claim of error with respect to that subrule. "It is axiomatic that where a party fails to brief the merits of an allegation of error, the issue is deemed abandoned by this Court." *Prince v MacDonald*, 237 Mich App 186, 197; 602 NW2d 834 (1999).

the drainage district. Such petition shall ask for the location, establishment and construction of the drain or drains, or any part thereof, as described in said order. The petition shall be signed by a number of freeholders in said drainage district, whose lands would be liable to an assessment for benefits, equal to ¹/₂ of the number of freeholders whose lands would be traversed by the drain or drains applied for, or abut on the part of any highway or street along the side of which such drain extends, between the point where such drain enters such highway and the point where it leaves such highway and which lands are within the drainage district. Such petition shall be accompanied by a description of the land in said district owned by each signer and by a certificate of the county treasurer as to payment of taxes and special assessments against such lands . . . .

Plaintiffs argue that Albee Township's petition failed to comply with MCL 280.121 because it was not signed by any freeholders in the drainage district as required under the statute. The Drain Board correctly argues, however, that MCL 280.121 is inapplicable because it pertains to *new* drains rather than to preexisting drains. The statute explicitly applies to "a petition to locate, establish and construct a drain . . . ." The petition filed in this case was not a petition to locate, establish, or construct a drain. Rather, it was a petition seeking the maintenance and improvement of an established drain. Thus, MCL 280.121 is inapplicable.

Plaintiffs also argue that the petition failed to comply with MCL 280.196(4) and (5), which provide:

(4) If an inspection discloses the necessity of expending money for the maintenance and repair of a drain in order to keep it in working order, the drain commissioner for a county drain, or the drainage board for an intercounty drain, may without petition expend an amount not to exceed in any 1 year $5,000.00 per mile or fraction of a mile for maintenance and repair of a drain, exclusive of inspection and engineering fees and the cost of publication and

mailing. The determination of the maximum expenditure allowed without a petition or resolution shall be based on the total number of miles of the drain and not on the actual number of miles or location of the maintenance or repair.

(5) If the drain commissioner or the drainage board finds it necessary to expend funds in excess of the amount established in subsection (4) per mile or fraction of a mile in any 1 year for the maintenance and repair of a drain, the additional amounts shall not be expended until approved by resolution of the governing body of each township, city, and village affected by more than 20% of the cost.

Plaintiffs assert that both the initial estimated cost of $2.5 million and the increased estimated cost of $6.1 million exceed the $5,000-per-mile cap for proceeding without a petition under the above provisions. Because a petition was filed, however, the Drain Board was not proceeding without a petition, and MCL 280.196(4) and (5) are inapplicable.

Plaintiffs further argue that the Drain Board could proceed under MCL 280.196(9) if Albee Township pays the entire cost of the project. MCL 280.196(9) states:

Nothing in this section prohibits the drain commissioner or the drainage board from spending funds in excess of the amount established in subsection (4) per mile or fraction of a mile in any 1 year for inspection, maintenance, and repair of a drain when requested by a public corporation, if the public corporation pays the entire cost of the inspection, maintenance, and repair.

Subsection (9) is inapplicable, however, because Albee Township's petition sought more than the mere "inspection, maintenance, and repair" of the drain. It also sought, if necessary, to relocate, widen, deepen, add branches, and install structures or mechanical devices to the drain. In addition, Albee Township was not seeking sole responsibility for the entire cost of the project. In its petition, Albee Township averred that it

would be liable "for at least a percentage of the total amount to be assessed for the cost of the proposed drain project." It did not indicate that it would be responsible for the entire cost of the project as required under MCL 280.196(9). Thus, that provision is inapplicable.

An examination of Albee Township's petition reveals that it was filed pursuant to MCL 280.192, which provides:

> Whenever a drain or portion thereof, which traverses lands in more than 1 county, and lands in more than 1 county shall be subject to assessments, needs *cleaning out, relocating, widening, deepening, straightening, tiling, extending or relocating along a highway, or requires structures or mechanical devices* that will properly purify or improve the flow of the drain or pumping equipment necessary to assist or relieve the flow of the drain, or needs supplementing by the construction of 1 or more relief drains which may consist of new drains or extensions, enlargements or connections to existing drains, or needs 1 or more *branches added* thereto, freeholders within the drainage district equal to 50% of the number of freeholders whose lands are traversed by said drain or drains in said petition or abut on any highway or street along either side of which such drain extends, between the point where said drain enters such highway and the point where it leaves such highway or street and which lands are within the drainage district, may make a petition in writing to the commissioner of any county having lands in such district setting forth the necessity of such proposed work. *Whenever it is necessary for the public health of 1 or more cities, villages or townships, the petition may be signed solely by a city, village or township when duly authorized by its governing body or by any combination of such municipalities if the municipality or municipalities will be liable to assessments at large for a percentage of the total amount to be assessed for the cost of the proposed work.* The percentage of cost apportioned to the municipality or municipalities shall be based upon the benefits to accrue to such municipality or munici-

palities and also the extent to which they contribute to
the conditions which makes the drain necessary. Upon
receipt of such petition, the commissioner shall notify
the state director of agriculture and the commissioners
. of each county embracing any lands in the drainage
district, and the director of agriculture shall call a
meeting within the time and in the manner prescribed in
[MCL 280.122]. The persons so named shall constitute a
drainage board and if such work is then determined to be
practicable, they may thereupon appoint a competent
surveyor or engineer to make a survey of said drain, and
lay out a drainage district according to [MCL 280.104].
After the surveyor or engineer has filed all data with the
drainage board, the director of agriculture shall call a
meeting as provided in [MCL 280.122], and thereafter
take all steps and perform all acts which are required to
be done by said board upon a petition for the location,
establishment and construction of drains as provided in
[MCL 280.121 to 280.135]. Such board and the commis-
sioners shall exercise such power and be subject to such
limitations as are provided in [MCL 280.121 to 280.135].
[Emphasis added.]

In its petition, Albee Township used the same language
as used in the above provision. It sought "cleaning out,
relocating, widening, deepening, straightening, tiling,
extending or relocating along a highway, adding
branches, and/or installing, maintaining or repairing
structures or mechanical devices to the drain . . . ." In
addition, the petition asserted that the project was
"necessary and conducive to the public health, conve-
nience, or welfare of Albee Township," that the petition
was authorized by Albee Township's governing body,
and that Albee Township "will be liable to assessments
at large for at least a percentage of the total amount to
be assessed for the cost of the proposed drain project."
In such circumstances, MCL 280.192 allows a petition
to be signed *solely* by a city, village, or township, as the
trial court determined.

Plaintiffs argue that permitting a single township to petition for a drainage project that other townships, counties, villages, and cities will be partially responsible for the cost of is inconsistent with the other, previously quoted, sections of the Drain Code, which must be read together with MCL 280.192. "Statutes that relate to the same subject or share a common purpose are *in pari materia* and must be read together as one law, even if they contain no reference to one another." *Mich Electric Coop Ass'n v Pub Serv Comm*, 267 Mich App 608, 616; 705 NW2d 709 (2005). Even reading the statutes together, however, MCL 280.192 explicitly provides a method for initiating a drainage project solely by a city, village, or township when the project is necessary for the public health. The fact that other statutory provisions provide alternative methods for initiating a drainage project does not negate or render nugatory the applicable language in MCL 280.192.

Plaintiffs also argue that allowing a single township to initiate a drain project would render mere surplusage the statutory phrase, quoted above, "or by any combination of such municipalities if the municipality or municipalities will be liable to assessments at large for a percentage of the total amount to be assessed for the cost of the proposed work." Plaintiffs contend that if a petition may be signed by only one township, then there is no need for a combination of municipalities to sign a petition. To the contrary, the statute provides two methods for initiating a drainage project when "it is necessary for the public health of 1 or more cities, villages or townships . . . ." The first method allows a petition to be signed "solely by a city, village or township when duly authorized by its governing body . . . ." The second method, as indicated by the disjunctive word "or," allows a petition to be signed "by any combination of such municipalities if the municipality

or municipalities will be liable to assessments at large for a percentage of the total amount to be assessed for the cost of the proposed work." Merely because a petition may be signed by only one city, village, or township does not foreclose the possibility that a combination of municipalities may wish to sign a petition in lieu of a single municipality. Thus, allowing a single city, village, or township to sign a petition does not render the statutory language permitting a combination of municipalities to sign a petition mere surplusage.

Finally, plaintiffs argue that a more logical interpretation of the word "solely" would result if that word was interpreted to mean that in lieu of a petition by 50 percent of the number of freeholders, a petition may be signed solely by the municipalities that will be liable to assessments at large. This interpretation, however, disregards the placement of the word "solely," which does not refer to or in any way pertain to the number of freeholders. Rather, the term immediately precedes the phrase "by a city, village or township . . . ." Thus, when read in context, the language states that "the petition may be signed solely by a city, village or township . . . ." "[S]tatutory language must be read and understood in its grammatical context." *Dep't of Environmental Quality*, 491 Mich at 238. Accordingly, plaintiffs' argument lacks merit. Because Albee Township's petition gave the Drain Board jurisdiction to proceed with the proposed drain project pursuant to MCL 280.192, the trial court did not err by granting the Drain Board's motion for summary disposition on that basis.

Plaintiffs next argue that the Drain Board failed to comply with the statutory requirement for practicability hearings when the practicability hearing that was held on June 3, 2010, pertained to a much smaller drainage project. Plaintiffs argue that a second practi-

cability hearing must be held because the size of the proposed drainage district increased after the practicability hearing and the estimated cost of the project increased from $2.5 million to $6.1 million plus additional costs for contingencies. Plaintiffs' argument lacks merit. MCL 280.103, which pertains to practicability hearings, provides:

> Upon convening said meeting the state director of agriculture or any deputy selected by him shall act as chairman. The said drainage board *shall consider such application, and determine the sufficiency of the signatures thereto, and shall go over the route of said proposed drain and take testimony to determine its practicability.* All persons owning lands liable to assessment for benefits or whose lands shall be crossed by said drain or any municipality affected may appear for or against said drain proceedings. If at said meeting or at any subsequent time before the entry of the order designating a drainage district, they shall determine that the drainage of the proposed drain area is not practical, no further action shall be taken thereon within 1 year. *If said proposed drain is determined to be practical, then the drainage board shall cause a survey thereof to be made by a competent surveyor or engineer to ascertain the area which would be drained by the proposed drain, and the route and type of construction of drain or drains most serviceable for that purpose.* [Emphasis added.]

Thus, the purposes of a practicability hearing are to determine the sufficiency of the signatures on an application and to determine whether a proposed drainage project is practicable. Only if the Drain Board determines that a proposed project is practicable will a survey be conducted to ascertain the area to be drained and the scope of the project.

MCL 280.103 is consistent with MCL 280.192, which states that if the Drain Board determines that the proposed project is practicable, it "may thereupon ap-

point a competent surveyor or engineer to make a survey of said drain, and lay out a drainage district according to [MCL 280.104]." MCL 280.104 provides:

> The surveyor or engineer authorized to make the survey shall ascertain the size and depth of the drains, and shall preserve all minutes with reference thereto. He shall prepare plans, drawings and profiles thereof, together with a computation of the yards of earth to be excavated, and where practicable the leveling of the spoil banks or the amount of tile or pipe to be used and the necessary bridges and culverts or fords to be built in constructing the proposed drains, *and his estimate of the cost of such construction. He shall thereupon lay out a proposed drainage district*, which district may be described by its boundaries of streets and highways or tracts or parcels of land or by a description of all tracts or parcels of land, including therein all highways, townships, counties, cities and villages which would be benefited by the construction of the proposed drain, all of which he shall deliver to the drainage board. *The surveyor or engineer shall not be limited to the route described in the application, but may recommend a route and type of construction for the drains he considers most serviceable for draining the area involved.* [Emphasis added.]

The emphasized language makes clear that the scope of a proposed drainage project, including the area encompassed in the drainage district and the cost of the project, is not determined until a surveyor or engineer conducts a survey *after the Drain Board determines at a practicability hearing that a proposed project is practicable*. Accordingly, plaintiffs' argument that a second practicability hearing must be conducted because the size and cost of the proposed project increased after the June 3, 2010, practicability hearing lacks merit.

Plaintiffs also argue that a hearing regarding the proposed addition of land to a drainage district must be held before a hearing to determine the necessity of the

proposed project. Plaintiffs contend that a hearing regarding the addition of land to a drainage district is separate and distinct from a necessity hearing and must precede the necessity hearing. Plaintiffs rely on MCL 280.197, which provides:

(1) On receipt of a petition filed under this chapter, the commissioner or the drainage board may require a competent surveyor or engineer to make a survey of the drain or of the district, or a portion of the drain or district, or if necessary, lay out a new district including the land benefited, or make profiles, plans, or estimates of the work and file all data concerning the profiles, plans, or estimates with the commissioner or the chairperson of the drainage board. *If it appears that land has been added to the drainage district, the drain commissioner for a county drain, or the chairperson of the drainage board for an intercounty drain, shall notify the board of determination who allowed the petition that the land should be added to the district.* The drain commissioner or chairperson of the drainage board shall call a meeting of the board of determination. . . . The notice shall specify the time, date, and place within the drainage district at which the board of determination shall reconvene. The drain commissioner or chairperson of the drainage board also shall cause the notice to be published once in a newspaper of general circulation in the county or a newspaper of general circulation in the area where the drain improvement is contemplated at least 10 days before the meeting. Notice of the time and place of the meeting, by first class mail, shall be sent at least 10 days before the date of the meeting, to each person whose name appears upon the last city or township tax assessment roll as owning land within the enlarged drainage district, at the address shown on the roll. . . .

(2) At the time, date, and place designated by the drain commissioner or the chairperson of the drainage board the board of determination shall reconvene. Upon reconvening, if the board of determination by a majority vote of members finds the proposed addition of the land to the drainage district necessary and conducive to the public health,

convenience, or welfare, they shall make an order to that effect and file the order with the drain commissioner or drainage board. The drain commissioner or drainage board shall take the steps and perform the acts which are required for the locating, establishing, and constructing of drains as designated in chapter 4 or *chapter 6*. [Emphasis added.]

Plaintiffs note that chapter 6, referred to in subsection (2), pertains to intercounty drains and includes MCL 280.122,[3] which involves the calling of a necessity hearing regarding a proposed drainage project. Plaintiffs assert that, under the plain language of subsection (2), a necessity hearing is permitted only after an order is entered adding land to the drainage district. Again, plaintiffs' argument lacks merit.

MCL 280.197 refers to a "board of determination" and requires that the board of determination decide a petition to add land to a drainage district. A board of determination is a group of individuals appointed to "determine the necessity of the proposed drain and whether the drain is conducive to public health, convenience, or welfare." MCL 280.72(3). As stated in *Grubb Creek Action Comm v Shiawassee Co Drain Comm'r*, 218 Mich App 665, 669-670; 554 NW2d 612 (1996):

The function of the board of determination is to determine whether a problem exists and whether a certain project is necessary. The board does not determine what is the best solution to the problem. If the board finds that the project is necessary, then the drain commissioner is responsible for assessing possible solutions. [Citations omitted.]

Under MCL 280.197(2), on which plaintiffs rely, the board of determination "shall *reconvene*" to determine whether "the proposed addition of the land to the

---

[3] Chapter 6, pertaining to intercounty drains, encompasses MCL 280.121 *et seq*.

drainage district [is] necessary and conducive to the public health, convenience, or welfare . . . ." [Emphasis added.] If so, the board of determination "shall make an order to that effect and file the order with the drain commissioner or drainage board" which "shall take the steps and perform the acts which are required for the locating, establishing, and constructing of drains as designated in chapter 4 or chapter 6." MCL 280.197(2). Thus, nothing in MCL 280.197 requires that a hearing to determine the proposed addition of land to a drainage district must be held before a hearing to determine the necessity of the proposed drainage project. In fact, it appears from MCL 280.72 and MCL 280.197 that the opposite is true, and that a necessity hearing precedes a hearing to determine whether to add land to a drainage district.[4] Therefore, summary disposition for the Drain Board was proper on this basis.

Finally, plaintiffs argue that the Drain Board's failure to comply with the requirements of the Drain Code, as discussed in their brief on appeal, precludes the assessment of costs against them or the drainage district pursuant to MCL 280.161. That provision states, in relevant part:

> [T]he circuit court of the county shall hear and determine the same without unnecessary delay, and if any material defect be found in the proceedings for establishing the drain, such proceedings shall be set aside. . . . If the proceedings be sustained, the party bringing the [action]

---

[4] We note that the term "board of determination" is a term of art as used in the Drain Code and that "[t]he drainage board shall be the board of determination and shall determine the question of necessity for drains located, established, and constructed under [chapter 6.]" MCL 280.122. Thus, an intercounty drainage board sits as a drainage board at a practicability hearing and as a board of determination at a necessity hearing.

shall be liable for the costs thereof, and if they be not sustained, the parties making application for the drain shall be liable for the costs.

Because we have determined that plaintiffs' arguments lack merit and that the Drain Board did not fail to comply with Drain Code requirements, plaintiffs' argument regarding the assessment of costs necessarily fails as well.

Affirmed. Defendant, being the prevailing party, may tax costs pursuant to MCR 7.219.

CAVANAGH, P.J., and SAAD and DONOFRIO, JJ., concurred.