# STATE OF MICHIGAN

# COURT OF APPEALS

JAMES SOTTILE,

        Plaintiff-Appellant,

v

COUNTY OF MONROE and DALE MALONE,

        Defendants-Appellees.

UNPUBLISHED
March 22, 2018

No. 337260
Monroe Circuit Court
LC No. 16-138545-CK

Before: MURRAY, P.J., and CAVANAGH and FORT HOOD, JJ.

PER CURIAM.

Plaintiff, James Sottile, appeals as of right the trial court's order granting the motion for summary disposition filed by defendants, Monroe County and Dale Malone, Monroe County Sheriff. For the reasons stated herein, we affirm.

## I. FACTS AND PROCEDURAL HISTORY

Plaintiff owned Star Towing, a towing company that received a substantial portion of its business from its placement on Monroe County's no-preference wrecker call list. The no-preference list, maintained by the Monroe County Sheriff's Office, is a list of towing companies whose services can be utilized at the request of law enforcement to remove abandoned or inoperable vehicles when the vehicle owners express no preference for removal by a specific company. According to Sheriff Malone, when an officer "calls for a no preference wrecker, dispatch in chronological order dispatches a wrecker to the scene to take care of whatever needs we need. And then it's supposed to be done on a rotating basis." The Sheriff's Office receives no monetary benefit from maintaining the list, nor are the towing companies paid by the County. To be placed on the list, a towing company must meet a number of requirements imposed by the Sheriff's Office, and sign a policy acknowledging those requirements. The policy states: "Wrecker services interested in working with the Monroe County Sheriff's Office shall agree to abide by the following requirements for the duration of their association with the Sheriff's Office. Failure to comply with all of these requirements may be cause for termination of the contract or removal from the no-preference wrecker call list."[1]

---

[1] Plaintiff, on behalf of Star Towing, signed the requirements document in May 2013.

In May 2015, plaintiff entered into a real estate and asset purchase agreement with Shane Anders, who owned another towing company operating in Wayne County, for the sale of Star Towing. The parties originally agreed that Anders would purchase Star Towing for $1.5 million, which included "goodwill" in the amount of $441,000.[2] However, Anders and plaintiff ultimately amended the agreement, and Anders purchased Star Towing in September 2015, for $800,000.

Both plaintiff and Anders testified that a series of actions taken by Sheriff Malone are what led to a re-valuation of the company and a reduced purchase price. First, Anders testified that at the County's 911 dispatch meeting on June 23, 2015, during which plaintiff announced the decision to sell Star Towing to Anders, he became concerned when Sheriff Malone asked if he lived in Monroe County. Then, just two days later, without informing plaintiff, Sheriff Malone instructed dispatch to remove Star Towing from the no-preference list until further notice.[3] Sheriff Malone testified that he removed Star Towing from the list because the Sheriff's Office received a complaint that Star Towing was charging improper "gate fees."

Although the Sheriff's Office placed Star Towing back on the no-preference list by July 6, 2015, plaintiff and Anders met with officials from the Monroe County Sheriff's Office that month to discuss the issue. Anders testified that during the meeting, Sheriff Malone called him a criminal and said the business practices he employed in Wayne County would not be tolerated in Monroe County. According to Anders, in another meeting with Sheriff Malone and other towing companies at the end of July, Sheriff Malone again disparaged his business practices. With regard to that same meeting, plaintiff said that Sheriff Malone threatened to bid all of the County's no-preference towing to a single company.

Sheriff Malone admitted that he warned all of the towing companies in the meeting at the end of July that gouging the citizens of Monroe County would not be tolerated, but denied that he singled out Anders. He also denied commenting on Anders's reputation or ability to do business in Monroe County. Nevertheless, plaintiff testified that because of Sheriff Malone's threat to bid the County towing to a single tower, attacks on Anders's character, and willingness to remove Star Towing from the no-preference list without explanation, Anders refused to pay the originally agreed upon "goodwill," and negotiated a lower purchase price for the company. Anders's testimony confirmed that Sheriff Malone's actions altered his opinion of Star Towing's value, leading him to renegotiate the purchase price.

Plaintiff filed this action on January 25, 2016, claiming tortious interference with a business relationship or expectancy and breach of contract against defendants. In so doing, he alleged that defendants intentionally interfered with the sale of Star Towing by removing it from

---

[2] The agreement attached to plaintiff's summary disposition response actually states a purchase price of $885,000, but Anders and plaintiff both testified that the original purchase price was $1.5 million. The discrepancy has no bearing on our decision.

[3] The e-mail sent by Sheriff Malone read, "Until further notice the Sheriff's Office will not be using Star Towing."

the no-preference list between June 23, 2015, and July 6, 2015, and attacking Anders's reputation. Further, plaintiff asserted that defendants breached Star Towing's contract with the County by temporarily removing Star Towing from the no-preference list.

In response, defendants filed an answer denying the claims and raising the affirmative defense of governmental immunity. They also filed a motion for summary disposition pursuant to MCR 2.116(C)(7) and (10). With regard to the tortious interference claim, they argued that the County was entitled to governmental immunity under MCL 691.1407(1), and that Sheriff Malone was entitled to absolute immunity as the elective executive official of a level of government. Further, they contended that even if immunity did not bar the claim, plaintiff failed to establish the elements of tortious interference with a business relationship or expectancy because threatening to bid County towing business to a single company and removing a company from the no-preference list are not per se wrongful acts. With regard to plaintiff's breach of contract claim, defendants asserted that no contract existed between the parties, and that even if a valid contract existed, no breach occurred – Star Towing was removed from the no-preference list for charging gate fees, a type of fee not listed in the requirements document.

Plaintiff's response to defendants' motion for summary disposition asserted that governmental immunity does not protect against tortious interference claims, and that genuine issues of material fact precluded summary disposition of both the tortious interference and breach of contract claims. With regard to the breach of contract claim specifically, he asserted that the requirements document he signed was a valid contract between Star Towing and the County, and that genuine issues of material fact existed that defendants breached the contract by removing Star Towing from the no-preference list on the basis that Sheriff Malone did not like Anders.

The parties made arguments consistent with those made in their briefs at the summary disposition motion hearing, with plaintiff additionally asserting that Sheriff Malone was not entitled to absolute immunity from the tortious interference claim under MCL 691.1407(5), because he presented no evidence that he was the highest-ranking elective executive official of Monroe County, and acted beyond the scope of his authority. Ultimately, the trial court granted defendants' motion for summary disposition, reasoning that Sheriff Malone was entitled to absolute immunity from the tortious interference claim, and that no contract existed between Star Towing and the County.

## II. ANALYSIS

## A. TORTIOUS INTERFERENCE WITH A BUSINESS RELATIONSHIP OR EXPECTANCY

Plaintiff first argues that the trial court erred when it granted summary disposition of his tortious interference with a business relationship or expectancy claim. Specifically, he asserts that Sheriff Malone is not entitled to absolute immunity under MCL 691.1407(5), and that he presented sufficient evidence to establish a genuine issue of material fact that Sheriff Malone

tortiously interfered with the business relationship or expectancy he had with Anders for the sale of Star Towing.[4]

We review a trial court's determination regarding a motion for summary disposition de novo. *Odom v Wayne Co*, 482 Mich 459, 466; 760 NW2d 217 (2008).

> When a claim is barred by governmental immunity, summary disposition is appropriate under MCR 2.116(C)(7). Under MCR 2.116(C)(7), the moving party has the option of supporting its motion with affidavits, depositions, admissions, or other documentary evidence provided that the "substance or content" of the supporting proofs is admissible as evidence. In reviewing a motion under MCR 2.116(C)(7), we accept the factual contents of the complaint as true unless contradicted by the movant's documentation. When the material facts are not in dispute, this Court may decide whether a plaintiff's claim is barred by immunity as a matter of law. [*Petipren v Jaskowski*, 494 Mich 190, 201; 833 NW2d 247 (2013) (citations omitted).]

MCL 691.1407(5) provides: "A judge, a legislator, and the elective or highest appointive executive official of all levels of governmental are immune from tort liability for injuries to persons or damages to property if he or she is acting within the scope of his or her judicial, legislative, or executive authority." Thus, "[t]o qualify for absolute immunity from tort liability an individual governmental employee must prove his or her entitlement to immunity by establishing . . . (1) that he or she is a judge, legislator, or the elective or highest appointive executive official of a level of government and (2) that he or she acted within the scope of his or her judicial, legislative, or executive authority." *Petipren*, 494 Mich at 204.[5]

First, the evidence presented as well as relevant law establish that Sheriff Malone is the elective official of his level of government under MCL 691.1407(5). "The state has constitutionally delegated the duty of law enforcement to the county by providing for the office of sheriff." *Brownstown Twp v Wayne Co*, 68 Mich App 244, 247; 242 NW2d 538 (1976), citing Const 1963, Art 7, § 4; see also *People v Van Tubbergen*, 249 Mich App 354, 361; 642 NW2d 368 (2002). Const 1963, Art 7, §4 states, in relevant part: "There shall be elected for four-year

---

[4] Although plaintiff's complaint appeared to claim tortious interference against both Monroe County and Sheriff Malone, in his reply brief, plaintiff states that he "never brought the tortious interference claim against the County in the first place. The only claim against the County is for **breach of contract**, which was not waived."

[5] The Supreme Court adopted this reasoning from the dissenting opinion in *Petipren v Jaskowski*, 294 Mich App 419, 434 n 1; 812 NW2d 17 (2011) (MURRAY, P.J., dissenting) ("Contrary to [the] plaintiff's arguments, the conclusion that the police department is a level of government emanates from the definitions contained with the governmental tort liability act, MCL 691.1401 *et seq.*"). Accordingly, Sheriff Malone only had to establish that he was the elective executive official of *a* level of government, not the highest elective official of all of Monroe County, as plaintiff argues.

terms in each organized county a sheriff, a county clerk, a county treasurer, a register of deeds and a prosecuting attorney, whose duties and powers shall be provided by law." Sheriff Malone testified that he was elected sheriff of Monroe County in 2013, and that he is the highest-ranking member of the Sheriff's Office, as the rankings, from lowest to highest, are deputy, sergeant, lieutenant, captain, major, and sheriff.[6] As such, he possessed the executive power to preserve the public peace, and was tasked with "enforcing the laws enacted by the Legislature under the police power," *Nat'l Union of Police Officers Local 502-M, AFL-CIO v Bd of Comm'rs for Wayne Co*, 93 Mich App 76, 82; 286 NW2d 242 (1979), and carrying out the statutory duties of sheriffs, *Van Tubbergen*, 249 Mich App at 361.

Our holding is consistent with those decisions of this Court which have held that police chiefs are entitled to absolute immunity as the highest elective or appointive executive officials of a level of government. See, e.g., *Payton v Detroit*, 211 Mich App 375, 394; 536 NW2d 233 (1995) ("[W]hen acting in his executive authority, the police chief of the City of Detroit is absolutely immune from tort liability."); *Meadows v Detroit*, 164 Mich App 418, 426-427; 418 NW2d 100 (1987) (holding police chief was entitled to absolute immunity). Further, in *Rose v Saginaw Co*, 353 F Supp 2d 900, 924-925 (ED Mich, 2005), the United States District Court for the Eastern District of Michigan held that the sheriff of Saginaw County qualified for absolute immunity under MCL 691.1407(5).[7]

Plaintiff also failed to establish a genuine issue of material fact as to whether Sheriff Malone acted within the scope of his executive authority. Plaintiff alleged in his complaint, and now argues on appeal, that Sheriff Malone tortiously interfered with the business relationship or expectancy he had with Anders for the sale of Star Towing by calling Anders a criminal, saying Anders would be unable to do business in Monroe County, and removing Star Towing from the no-preference list without a valid explanation. Even accepting these allegations as true,[8] however, we hold that Sheriff Malone's actions fell within the scope of his executive authority.

"Where . . . the highest appointive executive official acts within the authority vested in the official by virtue of his or her executive position and there are no questions of material fact, that official is entitled to absolute immunity as a matter of law." *Petipren*, 494 Mich at 215. "Executive authority" under MCL 691.1407(5), "refers to all those powers vested in the highest executive official by virtue of his or her role as an executive official[.]" *Id*. at 212. To determine whether actions are within an executive official's scope of authority, we look to a number of factors " 'including the nature of the specific acts alleged, the position held by the official

---

[6] This testimony contradicts plaintiff's assertion that Sheriff Malone offered no evidence that he is an elective executive official of a level of government under MCL 691.1407(5).

[7] "Although this Court is not bound by a federal court decision construing Michigan law, it may follow the decision if the reasoning is persuasive." *Allen v Owens-Corning Fiberglas Corp*, 225 Mich App 397, 402; 571 NW2d 530 (1997).

[8] Sheriff Malone disputed these allegations. He testified that although he did tell the towing companies he would not let anyone gouge the citizens of Monroe County, he never called Anders a criminal or said that he did not want Anders operating a business in Monroe County.

alleged to have performed the acts, the charter, ordinances, or other local law defining the official's authority, and the structure and allocation of powers in the particular level of government.' " *Id*. at 205-206, quoting *American Transmissions, Inc v Attorney General*, 454 Mich 135, 141; 560 NW2d 50 (1997). "This objective inquiry does not include analysis of the actor's subjective state of mind. An official's motive or intent has no bearing on the scope of his or her executive authority." *Petipren*, 494 Mich at 206.

As provided above, "the state's duty of law enforcement for the protection of its citizens has been constitutionally delegated to the county in the person of the sheriff," *Nat'l Union of Police Officers Local 502-M, AFL-CIO*, 93 Mich App at 82, and "the duties and authority of the sheriff are established by statute," *Van Tubbergen*, 249 Mich App at 361, citing MCL 51.68 *et seq*. One such duty involves providing services to citizens on county roads and highways by monitoring traffic violations, enforcing the criminal laws of the state, investigating accidents, and providing emergency assistance. MCL 51.76(2). In addition, Sheriff Malone and plaintiff both testified that the Sheriff's Office maintained and controlled the no-preference list, and imposed requirements for inclusion on the list. Considering this testimony and the statutory and constitutional authority cited, the alleged actions fall within Sheriff's Malone's scope of authority – he possessed the authority to facilitate the removal of vehicles from County roads and highways by establishing and maintaining a list of towing companies, and to protect the citizens of Monroe County either by removing unfit companies from the list, or expressing disapproval of bad business practices. Thus, we hold that the trial court did not err when it granted summary disposition of plaintiff's tortious interference claim, as Sheriff Malone is entitled to absolute immunity.[9]

## B. BREACH OF CONTRACT

Plaintiff also argues that the trial court erred when it granted summary disposition of his breach of contract claim. "A motion under MCR 2.116(C)(10) tests the factual basis underlying the plaintiff's claim." *Baker v Arbor Drugs, Inc*, 215 Mich App 198, 202; 544 NW2d 727 (1996). A court may grant a motion for summary disposition pursuant to MCR 2.116(C)(10) if "there is no genuine issue as to any material fact, and the moving party is entitled to judgment or partial judgment as a matter of law." MCR 2.116(C)(10). "[A] genuine issue of material fact exists when, viewing the evidence in a light most favorable to the nonmoving party, the 'record which might be developed . . . would leave open an issue upon which reasonable minds might differ.' " *Debano-Griffin v Lake Co*, 493 Mich 167, 175; 828 NW2d 634 (2013), quoting *Shallal v Catholic Social Servs of Wayne Co*, 455 Mich 604, 609; 566 NW2d 571 (1997) (quotation marks and citations omitted). To make the determination, we must consider " 'the pleadings, admissions, affidavits, and other relevant documentary evidence of record . . . .' " *Maple Grove Twp v Misteguay Creek Intercounty Drain Bd*, 298 Mich App 200, 206-207; 828 NW2d 459 (2012), quoting *Walsh v Taylor*, 263 Mich App 618, 621; 689 NW2d 506 (2004). Further, "[t]he

---

[9] Because the trial court properly concluded Sheriff Malone is entitled absolute immunity, we need not address plaintiff's argument that he established a genuine issue of material fact as to each element of tortious interference with a business relationship or expectancy.

existence and interpretation of a contract are questions of law reviewed de novo." *Kloian v Domino's Pizza, LLC*, 273 Mich App 449, 452; 733 NW2d 766 (2006).

For a successful breach of contract claim, a plaintiff must prove that a contract existed, the other party breached the contract, and the breach resulted in damages. *Bank of America, NA v First American Title Ins Co*, 499 Mich 74, 100; 878 NW2d 816 (2016). "A valid contract requires five elements: (1) parties competent to contract, (2) a proper subject matter, (3) legal consideration, (4) mutuality of agreement, and (5) mutuality of obligation." *Id*. at 101 (quotation marks and citation omitted). Consideration is a "bargained-for exchange – 'a benefit of one side, or a detriment suffered, or service done on the other,' " *id*., quoting *Gen Motors Corp v Dep't of Treasury*, 466 Mich 231, 239; 644 NW2d 734 (2002), while "[m]utuality of obligation simply means that both parties are bound to an agreement or neither is bound," *Bancorp Group, Inc v Mich Conference of Teamsters Welfare Fund*, 231 Mich App 163, 171; 585 NW2d 777 (1998). If consideration exists, mutuality of obligation also exists. *Hall v Small*, 267 Mich App 330, 334-335; 705 NW2d 741 (2005).

Plaintiff asserts that the document he signed listing the requirements a towing company must abide by if placed on the County's no-preference list was a valid contract because it referred to itself as a contract,[10] and because adequate consideration, mutuality of agreement, and mutuality of obligation existed as evidenced by his testimony that in exchange for companies abiding by the requirements listed, the County received the benefit of having the roads cleared of inoperable or abandoned vehicles.

Although we recognize the benefit the no-preference towers provide to the County – removal of vehicles from County roads – we agree with the trial court that the requirements document signed by plaintiff was not a valid contract between Star Towing and the County, and that defendants were entitled to summary disposition of plaintiff's breach of contract claim. The document amounts only to a list of requirements a towing company must comply with to be considered for the County's no-preference list, and lacks any promises or obligations for performance on the County's part in return. Indeed, it does not provide that a company who meets the requirements must be placed on the no-preference list, remain on the list for any length of time, or be utilized by the County while on the list. Nor does it prevent a towing company from deciding, at any time, that it no longer wishes to abide by the requirements or remain on the list. Further, the terms of the document do not establish that a towing company may *only* be removed for violating the stated requirements. Thus, even if Sheriff Malone removed Star Towing from the no-preference list based on his negative opinion of Anders, rather than the

---

[10] Plaintiff specifically points to that portion of the document which states: "Wrecker services interested in working with the Monroe County Sheriff's Office shall agree to abide by the following requirements for the duration of their association with the Sheriff's Office. Failure to comply with all of these requirements may be cause for termination of the contract or removal from the no-preference wrecker call list." However, this language actually implies that any contract between Star Towing and the County was separate from, and not formed by, the requirements document presented by plaintiff.

charging of improper gate fees, a breach would not have occurred.  See *Wright v Genesee Co Corp*, 659 F Supp 2d 842, 848-849 (ED Mich, 2009) (reasoning that even if a memorandum of requirements for placement on a no-preference towing listed constituted a contract, no breach occurred because the memorandum's terms did "not establish a right for [the] Plaintiffs to only be terminated 'for cause' ").

Affirmed.


/s/ Christopher M. Murray
/s/ Mark J. Cavanagh
/s/ Karen M. Fort Hood